## Cornett's Administrator v. Louisville & Nashville Railroad Company.

### (Decided June 14, 1918.)

## Appeal from Letcher Circuit Court.

1. Railroads—Death of Person on Track—Licensee—Trespasser—Lookout Duty—Evidence.—Evidence that occasionally a person would cross the track at the place of the accident was not sufficient to establish the duty of maintaining a lookout although the accident occurred in an incorporated town of from sixty to seventy-five inhabitants.

2. Railroads—Death of Person on Track—Trespasser.—One who sits down upon a railroad track and goes to sleep or becomes unconscious is a trespasser though at a point where persons are accustomed to cross in large numbers.

3. Railroads—Death of Person on Track—Negligence After Discovery of Peril—Evidence—Sufficiency.—In an action for the death of one killed on a railroad track, evidence of the failure of the engineer to exercise ordinary care to avoid injuring the deceased after his peril was discovered, held insufficient to take the case to the jury.

HAYS & NEWMAN and WILLIAM G. DEARING for appellant.

MORGAN & HARVIE, D. I. DAY, BENJAMIN D. WARFIELD and SAMUEL M. WILSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On July 17, 1915, Gideon Cornett was struck and killed by a train operated by the Louisville & Nashville Railroad Company. In this action by his administrator to recover damages for his death, the trial court at the conclusion of plaintiff's evidence gave a peremptory in favor of the defendant. Plaintiff appeals.

The accident occurred in Blackey, an incorporated town of sixty or seventy-five inhabitants. The town consists of several small stores on one side of the railroad and three section houses, the depot, school and a few

scattered residences on the other side. Just in front of the store houses is a sidewalk and to the east of the sidewalk is a street. A few feet to the east of the street is the railroad track. The accident occurred about ten o'clock at night. While no one testified that Cornett was intoxicated, it is apparent from the testimony that he had been drinking both whiskey and brandy. A few minutes before the accident, he sat down on defendant's track at a point about 220 feet north of the depot. At the time of the accident his face was in his hands and his elbows were resting on his knees. While in this position he was struck by an engine drawing thirty-two cars. Only the wheels of the pony truck passed over his body. Two witnesses saw the engine when it was about 75 feet away and endeavored to attract the attention of the deceased to the approaching train by calling to him, and also tried to reach him in time to prevent the accident. The train was moving at about four miles an hour and the engineer, who was expecting a signal from the rear, would first look to the rear and then along the track in front of his engine. According to his evidence and that of the other witnesses, there was a small dog near the deceased. When the engineer first saw the object on the track he thought it was a hog. He was then from thirty to thirty-five feet away. He immediately applied the service brakes and brought the train to a stop just as the two small wheels in front passed over the body of the deceased.

It is first insisted for appellant that the peremptory should not have gone because the company was under the duty to maintain a lookout, and had a proper lookout been maintained the peril of deceased would have been discovered in time to avoid the injury. This contention is based on the fact that Blackey is an incorporated town and that there was evidence tending to show that people in large numbers frequently gather about the depot and pass to and fro across the tracks. In the more recent cases we have ruled that the duty of keeping a lookout depends not on the fact that the place of injury was in an incorporated city or town, but on whether the company's track at the place of the accident was used by the public in such large numbers with the knowledge and acquiescence of the company that the presence of persons on the track should be anticipated. C. & O. Ry. Co. v. Dawson's Admr. 159 Ky. 296, 167 S. W. 125; C. & O. Ry.

v. Warnock's Admr., 150 Ky. 75, 150 S. W. 29; Corder's Admr. v. C. N. O. & T. P. Ry. Co., et al., 155 Ky. 536, 159 S. W. 1144; C. & O. Ry. Co. v. Berry's Admr., 164 Ky. 280, 175 S. W. 340. Here there was no proof of the habitual use by the public in large numbers of defendant's track at the place of the accident The evidence showed that the accident occurred at ten o'clock at night, and that only occasionally would a person use the track at the place of the accident. It is therefore clear that defendant was under no duty to maintain a lookout. We may further add that one who sits down upon a railroad track and goes to sleep or becomes unconscious, is a trespasser though at a point where persons are accustomed to cross the tracks in large numbers. Lyon's Admr. v. I. C. R. R. Co., 22 Ky. Law Rep. 1032, 59 S. W. 507; L. & N. R. R. Co. v. Bay's Admr., 142 Ky. 407, 134 S. W. 450.

The only question remaining for decision is whether the engineer exercised ordinary care to avoid injuring the deceased after his peril was discovered. It is insisted for appellant that the testimony of Fess Whitaker was sufficient to take the case to the jury because he stated that the train could have been stopped instantly by applying the emergency brakes. This, however, is not the effect of his evidence. On being asked to tell the jury within what distance the train could have been stopped by applying the emergency brakes, he replied, "Instantly, just like they did. They stopped it instantly that night." The engineer testified that the night was misty and the track slippery. He discovered the presence of deceased on the track when about thirty or thirty-five feet away. He immediately applied the service brakes and could not have stopped the train sooner if he had used the emergency brake. Fairly considered there is no conflict between Whitaker's statement and that of the engineer. Though Whitaker did say that the train could have been stopped instantly by applying the emergency brake, he qualified this statement by adding, "just like they did. They stopped it instantly that night." In cases of this kind the law does not look to bare possibilities, but only to what could have been done under the circumstances by the exercise of ordinary care. Viewing the case in this light we conclude that the evidence of the engineer's failure to exercise ordinary care to avoid injuring the deceased after his peril was discovered, was not sufficient to take the case to the jury.

Judgment affirmed.