## Howard, By, etc. v. Illinois Central Railroad Company.

(Decided September 21, 1920.)

### Appeal from Graves Circuit Court.

1. Railroads—Licensees—Trespassers—Duty to Each.—A railroad company in running its trains, owes no duty to a trespasser on its tracks except to exercise ordinary care, with all the means at its command, to prevent injury to him after.his peril has been discovered, but it owes to licensees, at places where it must anticipate the presence of persons on the track, the duty of lookout and warning.

2. Railroads—When Traveler on Track is Trespasser.—Where school children and other persons used the tracks of a railroad company out in the country, and outside the corporate limits of a small town, in going to and from their places of residence to the little town, they were trespassers and not licensees, no matter how long this use of the tracks had been continued.

STANFIELD & STANFIELD for appellants.

ROBBINS & ROBBINS and TRABUE, DOOLAN and HELM & HELM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The appellant, Mahaley Howard, a girl nine years old, when walking on the track of the appellee railroad company, was struck and injured by the engine of a passing train. To recover damages for the injuries so sustained she brought this suit by her next friend and on a trial of the case after the evidence for the plaintiff had been introduced the trial court directed the jury to return a verdict for the railroad company and the plaintiff prosecutes this appeal.

The court was influenced to take the case from the jury because it was of the opinion that the plaintiff had failed to show any negligence on the part of the railroad company.

The grounds upon which the case went off in the trial court make it necessary that we should state the evidence that was thought by the trial judge insufficient to make out a case for the plaintiff.

Mahaley Howard lived with her parents near the railroad track about a half a mile south of the corporate limits of a little town called Hickory Grove, having a population of about two hundred. At the time in question, Mahaley Howard, in company with two other little girls, was on her way from her home to a school they attended in the town of Hickory Grove.

Between the place where she lived and Hickory Grove there are three tracks, one main and two side tracks, and Mahaley Howard testified that she was walking on the side track a short distance and then went over to the main track on which she was walking when struck. That the train by which she was struck stopped to take on or let off some passengers at a crossing near where she lived, and when she went on the track on her way to school she knew the train was standing on the crossing on its way to Hickory Grove; that the train had been in the habit of running on the siding and for this reason she left the side track and went to the main track not expecting that the train would on this occasion run on the main track; that she had been walking a short distance on the main track when struck; that she did not have any notice or warning of any kind, by the blowing of a whistle or the ringing of a bell; that she knew the train would come the way she was walking but she thought it would come on the side track and not the main track; that in going to and from school she had been in the habit of traveling on the track.

The father of Mahaley testified that the school children, black and white, living in his neighborhood, were in the habit of using the track in going to and from school at Hickory Grove, and had been so using it for several years; that the track was perfectly straight, from a point south of his house to a point beyond where Mahaley was struck, and there was nothing to prevent the men in the engine from seeing Mahaley on the track if they had been looking.

Halbrook and other witnesses testified that in the vicinity where Mahaley was struck, there lived a good many people and the school children and others were in the habit of walking on the track in going to and from Hickory Grove, and this custom had continued for more than twenty years.

It also appears that the train was running slowly at the time Mahaley was struck, and was stopped within sixty feet after hitting her; nor is there any dispute about the fact that the track at this point was perfectly straight and if the engine men had been keeping a lookout they could have seen Mahaley on the track; although it is not clear from the evidence how long she had been walking on the main track at the time she was struck. The evidence also shows that the alarm whistle was sounded just before Mahaley was struck and there is evidence to the effect that the engineer, as soon as the train was stopped, went back to the place where Mahaley was lying and said, "that anybody in the world would have thought that she would have gotten off before the train struck her."

The controlling question in the case is, was Mahaley a trespasser on the track or what might be called a licensee? Of course if she was a trespasser the company did not owe her any duty of lookout or warning, but only the duty of exercising ordinary care with all the means at their command to prevent injury to her after her peril was discovered, and as there is no evidence whatever that would fix liability on the company if Mahaley should be treated as a trespasser, it is not necessary to spend further time on this feature of the case.

If, however, she was a licensee, then the company owed her the duty of lookout and warning, and it is upon the theory that she was a licensee that her counsel predicates the case, and if she was a licensee and the company owed her the duty of lookout and warning there was sufficient evidence to take the case to the jury, because the train was running slowly and Mahaley could plainly be seen if she was on the main track, a sufficient length of time to enable the engineer to see her and give her warning of the coming train so that she might leave the track.

But in our opinion the evidence was not sufficient to show such use of the track by the public at this place as to put on the company the duty of lookout and warning. It is true, for many years the track had been used by school children and others in going to and from Hickory Grove, but it must be remembered that the tracks between Howard's residence and Hickory Grove were out in the country and that Mahaley was struck as much as one-fourth of a mile from the corporate limits of the little town of Hickory Grove, and if the use of tracks by the public in

places like this would convert them from trespassers into licensees, or put on railroad companies the duty of running slowly, keeping a careful lookout for persons on the track and of giving warning, there would be few stretches of track in any thickly settled, country neighborhood in the state through which a railroad runs that it would not be obliged to treat every person using the track as a licensee. The result would be that the public generally would feel safe to use as a public highway practically all of the railroad tracks in the state and this condition would put on railroad companies a burden and duty which in reason or justice they should not be called on to bear.

So many cases have been written on this subject by the court that it would serve no good purpose to extend this opinion by citations from them. Sufficiently illustrating the views of the court on cases like these are: Sizemore v. L. & E. Railway Co., 169 Ky. 497; Willis' Admx. v. L. & N. R. R. Co., 164 Ky. 124; Adkins v. B. S. & C. R. R. Co. 147 Ky 30; Chesapeake & Ohio R. R. Co. v. Nipp's Admr., 125 Ky. 49.

Some importance is attached by counsel for the plaintiff to the statement made by the engineer "that anybody in the world would have thought she would have gotten off before the train struck her," and it is argued that although Mahaley should be treated as a trespasser this statement of the engineer was some evidence that he saw Mahaley on the track some time before the engine struck her, and therefore discovered her peril in time to have given her warning or stopped the train before striking her. We do not however think it fair to give this remark of the engineer under the circumstances the meaning attributed to it by counsel. Evidently what the engineer meant was, that Mahaley must have known the train was coming, and, this being so, he wondered why she did not get off the track, and that she knew the train was coming behind her but did not get off the track because she thought it was coming on the side track, is admitted. There is no inference to be drawn from the remark of the engineer that he discovered the presence of Mahaley in time to have sounded the alarm or stopped the train before striking her.

Upon the whole case we think the trial court properly ruled that the plaintiff failed to make out a case and the judgment is affirmed.

### Dissenting Opinion by Judge Sampson.

I dissent from the majority opinion of the court because I sincerely believe the case was one for the jury on the facts. The train which struck this little plaintiff stopped to let off some passengers only a short distance from the place of the accident. It was then on a straight, clear track and in plain view of this little girl on her way to school. Her back was to the train. She did not know the train was coming, and she was walking on a track on which this train did not ordinarily run. The train was moving very slowly. It was a thickly settled community and the tracks at that point were constantly used by school children and other people as a walkway, and this fact was known to the trainmen. Moreover, there is no escape from the conclusion that the engineer in charge of the train saw the child long before the engine struck her, for when the accident happened he sprang from his cab to the ground and exclaimed, "Anybody in the world would have thought she would have gotten off before the train struck her." This was a part of the *res gestae* and therefore competent evidence. He had seen the little girl walking on the track but he did not trouble himself to sound a whistle or bell to warn her of her peril, relying upon her leaving the track without such warning, but when she failed to do so and was struck by the train, in his remorse the engineer exclaimed, "Anybody in the world would have thought she would have gotten off before the train struck her," in explanation of why he had failed to perform so easy yet important duty. To my mind there is no other inference to be drawn from this evidence than that the engineer had seen the child in time to have given the warning but regretted that he had failed to do so. At least, the whole situation, testimony and circumstances considered, there was sufficient evidence to warrant such a finding by the jury, and in my humble judgment the case should be reversed for a new trial and submitted to a jury under proper instructions.

I, therefore, dissent.