## Hines, Director General of Railroads v. Wilson's Admrx.

### (Decided May 20, 1921.)

### Appeal from Muhlenberg Circuit Court.

1. Appeal and Error—Motions for New Trial.—Under Civil Code, sec. 340, subsec. 6, a verdict will not be set aside unless flagrantly against the evidence, but when such is the case it is not only the right but the duty of the court to reverse and remand for a new trial.

2. Railroads—Use of Tracks by Public—Operation—Warning.—. Where the public generally, with the knowledge and acquiescence of the railroad company, continuously use its tracks for a long period of time, the presence of persons on the track at a point so used must be anticipated by the company in running its trains thereon, and it is the company's duty in the movement of cars at such places, whether in the daytime or at night, to give warning of the approach of its trains, to operate same at a reasonable rate of speed and to maintain a proper lookout.

3. Railroads—Operation—Lookout.—Where a train is being operated at a reasonable rate of speed and due warning of its approach is given and a lookout maintained, the company will not be liable

for injury to one who leaves a place of safety and gets on the track in front of an engine at a time when the distance between such person and the engine is so short that it is impossible for the engineer, in the use of the means at his command, to stop or check the train in time to avoid the injury.

TAYLOR, EAVES & SPARKS and BENJAMIN D. WARFIELD for appellant.

JOHN C. DUFFY and HUBERT MEREDITH for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

The Wickliffe mines are located about one-half mile north of Browder, a town of approximately two hundred people. These mines had been in operation for a period of several months prior to July 9, 1918, on which date appellee's intestate was killed while going from Browder to the mines. The accident happened about 6:30 in the morning.

The railroad depot is located near the south side of the town. The coal company's commissary to the north of the depot fronts on the railroad, as do a number of residences in the town. To the north of the depot is a road crossing. About one-fourth mile south of the depot is a signal post; from this point for about one-half mile north the track is straight and level. Some fifteen to thirty miners daily used this track at that time in the morning on their way to the mines. In addition to the miners the track is used by other persons in the neighborhood. As is to be expected, the witnesses are not in accord as to the number of persons so using the track. Practically all the witnesses, for both parties, agree that a north bound coal train, which reached Browder at that time, whistled when south of the depot. The trainmen say the bell was ringing, but several say they did not hear the bell ring. Decedent was walking in the same direction in which the train was going and when the engine got within about thirty feet of him it gave several shrill blasts of the whistle; decedent turned his head slightly and as he did so he was struck and instantly killed. The accident happened about two hundred yards north of the commissary.

For the defendant, the enginemen testify that in addition to the signal for the depot they whistled for the crossing, and that the bell was ringing. They saw people walking alongside the track, but no one was on the track

until decedent stepped onto the track when the train got within approximately thirty feet of him. As soon as he was seen to leave a point of safety the whistle was blown, but too late to avoid the accident. Plaintiff's witnesses, with one exception, corrborate defendant's testimony. Only one of them claims to have seen decedent on the track at a greater distance than thirty feet from the train. The one exception is a miner by the name of Wherry, who says he was 100 yards ahead of decedent when the train struck him. He heard the train whistle for the depot, but like most of the witnesses heard no more whistles until the distress signal was given.

From the testimony of this witness it is impossible to tell just how long decedent had been on the main track before he was struck by the engine.

In answer to a question as to how far decedent had been walking down the track he answers:

"I suppose he was walking down the track fifty yards."

When asked whether people ever travelled up and down the track he said: "No, not on the track, I suppose not."

This witness further testified as follows:

"Q. After Mr. Wilson got on the track in front of the engine, between the rails on the main track, I will get you to state whether or not the engineer could have stopped that train in time to have prevented the injury, you say it was just thirty feet away? A. You mean after the man got on the main track? Q. Yes. A. I don't think he could have stopped the train at all after the train gave the distress signal."

This last answer is in exact agreement with the testimony of all the witnesses to the accident. At the time the distress signals were given the train was so close to decedent it was impossible for him to have gotten out of its way. The trainmen say the distress signals were sounded as soon as decedent started toward the main track. There is no contrariety in the proof on this point. It is not surprising the witnesses do not agree in their estimate of the distance of the train from Wilson when the whistle was blown. According to Wherry's supposition, Wilson had been on the track for fifty yards; no other witness fixes the distance exceeding thirty feet. No one testifies the distress signal was not given

as soon as Wilson got on the track or attempted to do so. Whether, therefore, it was fifty yards or thirty feet all agree the train could not have been stopped in time to have prevented the accident. Nor, according to the weight of the evidence, was the train moving at an excessive rate of speed at the time.

Wherry says he was one hundred yards ahead of Wilson when the train hit him and that there was a bunch of men along there at the time on their way to work. He does not state when he first turned around, but whether it was when the distress whistle was heard by him, or before, it is quite possible from his position looking straight backward, and considering the presence of men on the track, he could have been mistaken in his estimate of the distance between the train and Wilson when he saw the latter on the track.

Considering the record from any viewpoint it presents at most a case cognizable under Civil Code, section 340, subsection 6, which authorizes a new trial when the verdict or decision is not sustained by sufficient evidence.

As said in L. & N. R. R. Co. v. Baker's Admr., 183 Ky. 795, 210 S. W. 674, under this section a verdict will not be set aside unless it is flagrantly against the evidence, but when such is the case it is not only the right but the duty of the court to reverse and remand for a new trial. This must be the order here.

It is urged by defendant that it was entitled to a directed verdict, but with this conclusion we cannot agree.

There were two tracks at Browder. The main track and the siding. Their use is variously stated by the witnesses as being from forty to three hundred persons daily. Where the public generally, with the knowledge and acquiesence of the railroad company, have continuously used its tracks for a long period of time the presence of persons on the track at the point where it is so used must be anticipated by the company in the running of its trains thereon, and it is the company's duty in the movement of cars at such places, whether in the daytime or at night, to give warning of the approach of its trains, and to operate same at a reasonable rate of speed, and to maintain a proper lookout. Unless signals are given the engineer has no right to assume that a person with his back to the train knows of its approach.

It is the habitual use rather than the location of the tracks that determines the question whether one is a trespasser or licensee. Whether there was such use in the present instance was for the jury, and if the tracks between Browder and the mines were habitually used at the time of morning when decedent was killed by such large numbers of persons as to impose upon the company the exercise of the duties above mentioned the company would be liable if it failed on the occasion mentioned to perform these duties. There is no question of lookout in this case because the engineer admits he saw the people on the track. If, however, the train was being operated at a reasonable rate of speed and due warning of its approach was given and lookout maintained the company would not be liable if decedent left a place of safety and got on the track in front of the engine at a time when the distance between decedent and the engine was so short that it was impossible for the engineer of said train, in the use of the means at his command, to stop or check the train in time to avoid the injury.

These, and these only, are the issues triable upon the next calling of the case, the evidence being substantially the same as upon the first trial.

The conclusions reached render unnecessary reference to other points raised by defendant's counsel, e. g., alleged error of the court in refusing to grant a continuance on the ground of an absent witness. Nor do we find it necessary to discuss the question of instructions. Upon a new trial the court should instruct the jury in accordance with the views herein expressed.

Wherefore the judgment is reversed for further proceedings consistent herewith.