## Louisville & Nashville Railroad Company v. Stidham's Administratrix.

(Decided March 17, 1922.)

### Appeal from Breathitt Circuit Court.

Railroads—Trespassers on Track—Exercise of Ordinary Care.— The duty of those operating trains to anticipate the presence of trespassers upon the track and to exercise ordinary care toward them as licensees to discover their presence, and to exercise ordinary care to prevent injuring them, does not arise where the greatest number of persons using the track, according to the largest estimate of any of the witnesses, was one hundred and fifty persons each twenty-four hours (though other witnesses gave the number at a less sum) and the place of the accident was in the country and at a point surrounded by a sparsely settled community, although the track connected two incorporated towns located about three miles apart, since to hold otherwise would in many instances defeat the very purpose of the organization and operation of railroads, which is rapid transportation.

BENJAMIN D. WARFIELD and O. H. POLLARD for appellant.

E. C. O'REAR, WILLIAM L. WALLACE and RYLAND C. MUSICK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Between four and five o'clock in the early morning of March 16, 1917, the dead body of Samuel B. Stidham was found lying face down in a path just out from the ends of the crossties on a fill upon which was the track of the appellant and defendant below, Louisville & Nashville Railroad Company, and on that part of its road running from Jackson in Breathitt county to Hazard and other places in eastern Kentucky, and a little less than two miles from the corporate limits of Jackson, the point being between three hundred and four hundred yards north from a way station called Dumont, from which station there is a spur track running to the town of

Quicksand, about one mile distant and where there is located a large saw milling operation. The body was found a few feet from a cattle guard, and there was a dent in the skull about the size of a silver quarter of a dollar and some scratched places on the face, and the nose was mashed. There was a bruised place on one of the legs and also one across the back near the waist line. Some of the witnesses saw some small red spots on the ends of some of the nearby ties which they took to be blood, but the first ones to reach the body said they saw no blood except what had accumulated under the face. At the time the body was found it was stiff and, according to the opinions of some of the witnesses, death had occurred some five or six hours beforehand.

At that time there was a local train which operated between Jackson and Quicksand, making several trips each day, known as the "shifter." This suit was filed by the administratrix of decedent against defendant to recover damages for the alleged negligent killing of him by defendant, which negligence, as alleged, consisted in the failure of those in charge of the "shifter" train to anticipate the presence of decedent upon the track and to take the necessary precautions for his safety, since it was averred that he was at a place on the track where, because of the acquiescence in the use of it by pedestrians, his presence should have been anticipated.

Appropriate pleadings made the issues and upon trial there was a verdict in favor of plaintiff for the sum of $17,000.00 which this court reversed in an opinion reported in 187 Ky. 139, upon the two grounds, that the proof failed to establish any negligence against the defendant, i. e., that the use of the track at the place where decedent's body was found was not shown to be such as required the company to anticipate the presence of persons thereon or to take any precautionary measures for their protection; and that the proof failed to show that decedent was killed by a collision with any train of defendant, much less by the only one which the petition alleged produced it; and it was held that the court erred in failing to direct a verdict for defendant. After the return of the case plaintiff amended her petition by alleging that those in charge of the "shifter" train actually saw decedent's presence upon the track in time by the exercise of ordinary care to have prevented a collision with him

and they negligently failed to do so. That pleading was denied and upon trial there was a verdict in favor of plaintiff for the sum of $15,000.00, which the court declined to set aside on the motion for a new trial, and from the judgment pronounced upon the verdict this appeal is prosecuted.

The chief contention made by defendant for a reversal of the judgment is the same as it made and we sustained on the former appeal, which is that the court erred in failing to sustain its motion for a peremptory instruction. Complaint is also made of the instructions of the court to the jury as well as of evidence introduced by plaintiff, and we think the record justifies each of the complaints, but in the course of the opinion we will discuss only such as we deem proper.

According to the record Jackson is a town of between fifteen and twenty-five hundred people, according to the estimates of the witnesses who testified to the fact, while the town of Quicksand, three miles from Jackson, has a population of between four hundred and one thousand, according to the same character of testimony. There is no town at all at the place, Dumont, but between it and Jackson there are three creeks running into the Kentucky river, and up and down them there are a few scattering houses located all the way from near the right of way to four miles therefrom. These facts appeared in the record when first before us and also the statements of witnesses that a "great number of people" walked the track both during the day and the night at the place where the decedent's body was found, which is near half way between Jackson and Quicksand, and in a very rugged portion of the country, as shown by a number of photographs introduced at the trial and brought here with the record. It is a sparsely settled portion of the country and is rough and mountainous. The cattle guard, near which the body was found, is shown to be a short distance from an abrupt curve around a point of the mountain which runs up to the South Fork of the Kentucky river. On one side of the road bed in rounding that point is a precipitous rock bluff, while on the other is an embankment running down to the river, and the head light on an engine would not shine down the track until it rounded that curve, the decedent being killed, according to the theory of plaintiff, between nine and ten o'clock on

the 15th of March, while the "shifter" train was making its last trip for the day from Quicksand to Jackson. Under these circumstances we said in the first opinion referred to: "Hence not only is there no proof of negligence, but it is mere matter of speculation and guesswork as to how or by what agency decedent lost his life and the court erred in not directing a verdict for the defendant." It was also held in that opinion that the cases of Caldwell's Admr. v. Chesapeake & Ohio R. R. Co., 155 Ky. 609; Stewart v. N. C. & St. L. Ry. Co., 146 Ky. 127; Sutton's Admr. v. Louisville & Nashville R. R. Co., 168 Ky. 81, and Hearell, Admr. v. I. C. R. R. Co., 185 Ky. 41, furnished facts much stronger for the respective plaintiffs than the facts appearing in this case as then presented, but in each of them a peremptory instruction for the defendant was approved.

The only additional testimony on the last trial, on the issue as to the use of the road at the particular point, consisted in estimates of the witnesses (some of whom testified on the former trial) as to the number of persons, according to their opinion, who walked the track at the point in question during each twenty-four hours, and some of them gave their estimates as to the number so using the track between the hours of seven, nine and ten o'clock at night. These estimates varied as to the number of persons traveling the track during the entire twenty-four hours from fifteen to thirty persons, according to the witness Louis Hays, to one hundred or one hundred and fifty, according to the witness Clay Watkins, and the greatest number who traveled the track at night between seven and ten o'clock, according to the highest estimate, was between twenty-five and thirty persons.

We have been cited to no case holding that the use of the track by pedestrians to the extent indicated was sufficient to impose upon the operators of trains the duty to anticipate the presence of persons thereon, and to take the required precautionary measures to prevent a collision with them. The cases cited and relied on by counsel for plaintiff, an illustration of which is C. & O. R. R. Co. v. Warnock's Admr., 150 Ky. 74, are instances where the injury occurred within or immediately near to an incorporated town and where the evidence showed almost constant travel at or about the same hour of the day as that of the injury. It is true that we have held in a num-

ber of cases that the fact of the accident happening within or without an incorporated town is not decisive of the question, but, nevertheless, it so happens that the places of the accident in those cases were near an incorporated town in a thickly populated community and the travel was so large as to require the application of the rule. We have been cited to no case, nor have we been able to find one, which holds that the railroad track in a sparsely settled country, a considerable distance away from any incorporated town, may be converted by the public in general into a public highway so as to require those operating trains to anticipate the presence of persons upon the track and to take the necessary precautions for their protection. On the contrary the later opinions of this court have followed the doctrine as laid down in the case of C. & O. R. R. Co. v. Nipp's Admrx., 125 Ky. 49, saying, "But the operation of this rule (anticipating the presence of persons on the track) has been confined to cities and thickly populated communities, and has not been, and will not be, exteded to rural communities or sparsely settled regions, although footpaths crossing the track and the right of way may be used by a large number of persons each day." In that opinion it is recognized that in country districts traversed by lines of railway it is nothing uncommon for a number of persons going to school houses, churches, stores and other public places to travel the right of way and upon the railway tracks, even with the acquiescence of the company, in that it takes no affirmative steps to prevent it, yet, it is therein said, "but this use by individuals of the tracks and right of way of railroad companies in places of this character (as stated above) does not convert them from trespassers into licensees. Nor does it impose upon the company any duty of lookout or warning. Persons who thus use the tracks and right of way do so at their peril."

In the case of Adkins' Admr. v. B. S. & C. R. R. Co., 147 Ky. 30, a demurrer was sustained to the petition, but it set out facts equally as strong as those proven in this case, and in sustaining the judgment of the trial court it was said: "The mere use of a railroad track by the public does not convert the users from trespassers into licensees, unless this use is at a place where the public have a right to go and be, as at a public crossing or the like, or, unless it is in a city, town or populous community where large

numbers of people use the track, thereby putting upon the company the duty of anticipating their presence upon the track, and the use of ordinary care to avoid injury to them.'' The opinion then goes on to say, in substance, that the use by persons in rural communities of railroad tracks as walkways is so universal in this state as that courts will take judicial knowledge of the fact, but that the practice howsoever long indulged in will not ripen into a right, nor will it impose upon railroad companies the duty to ''take some police measure to prevent it.''

In the case of Gregory v. L. & N. R. R. Co., 25 Ky. L. R. 1986, it is said, in substance, that if railroad companies should be required at all places up and down their lines to run their trains with the view of safety to trespassers ''the result would be to practically abandon the roads to them'' and would so retard the railroad business as to practically destroy it. The doctrine of that case was quoted and adopted in the later one of Willis' Admrx. v. L. & N. R. R. Co., 164 Ky. 124, in which case, according to the testimony, as many as one hundred and twenty-five people used the tracks at the place of the accident every day, though it was in the country but surrounded by a more thickly populated community than the one in the present case.    Other recent cases following the rule as laid down in the Adkins, Gregory and Willis cases are:   L. & N. R. R. Co. v. Horton, 186 Ky. 617; Hungate v. Hines, 188 Ky. 365; C., N. O. & T. P. R. R. Co. v. Brown, 192 Ky. 724; Henson's Admr. v. Hines, 193 Ky. 198; Howard v. I. C. R. R. Co., 189 Ky. 60; McKnight's Admr. v. L. & N. R. R. Co., 168 Ky. 86, and Sizemore's Admr. v. L. & E. R. R. Co., 169 Ky. 497   These later cases hold, in substance, that although the place of the accident be in an incorporated town, still if the amount of travel was not such, and had not been such, for a sufficient length of time as to create the presumption of an acquiescence on the part of the company and to require the operators of trains to anticipate the presence of persons upon the track, the duty to do so does not exist; and further, that in no case in the country will such duty arise unless the required amount of travel exists and it is in a thickly populated community. The truth of the matter is that the doctrine should not be extended, since to do so, as stated in a number of the cases referred to, would largely curtail and in some places practically destroy the efficiency of railroads in

discharging the very purpose of their organization and operation, which is rapid transportation. Perhaps, a better rule would be, as it does exist in some countries, that such trespassing should be positively forbidden. But it is our duty to apply the rule as announced in cases requiring it unless some statutory alteration is made, but we do not feel that it should be extended beyond the limits stated in the later cases referred to.

We, therefore, conclude that no negligence against defendant was shown at the last trial, which dispenses with the necessity of discussing or determining other questions raised, though it is doubtful if the evidence on that trial was sufficient to authorize a finding that the death of decedent was produced by a collision with defendant's train. Instruction number one was also erroneous in many particulars, chief among which is that it assumed that the place where decedent was killed was one requiring precautionary measures on the part of the operators of the train, and it also required such precautions on their part as would enable a pedestrian on the track "to reach a place of safety." It is open to other criticisms but, in view of what has been said, we will take neither the time nor the space to point them out.

The motion for a peremptory instruction made by the defendant should have been sustained, and the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.