## Louisville & Nashville Railroad Company, et al. v. Banks' Admr.

(Decided October 3, 1922.)

### Appeal from Letcher Circuit Court.

1. Railroads—Injuries to Persons on Tracks—Trespassers—Licensees —Sufficiency of Evidence.—Evidence that a railroad track in an incorporated town of about 150 inhabitants was used as a walkway or driveway by from ten to thirty persons a day, accompanied by the statements of other witnesses that conveyed no definite idea as to the number of persons using the track, was not sufficient to show that those using the tracks were licensees to whom precautionary duties were due.
2. Railroads—Company Not Liable for Accident Occurring During Period of Federal Control.—A railroad company is not liable for personal injuries inflicted during the period of federal control.

B. D. WARFIELD, FIELDS, DAY & FIELDS and MORGAN & HARVIE for appellants.

R. MONROE FIELDS & F. G. FIELDS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This appeal is by the Louisville & Nashville Railroad Company and the Director General of Railroads from a judgment for $7,500.00 in favor of Elizabeth Banks' administrator.

While walking along or near the track of the Louisville & Nashville Railroad Company in the town of Blackey, Mrs. Banks was struck and killed by a train being operated by the Director General of Railroads, and the principal question for decision is, was Mrs. Banks a licensee to whom those operating the train owed the duty of giving warning, keeping a lookout, etc.?

Blackey is an incorporated town of about 150 inhabitants. The accident occurred at a point about 1,200

feet south of the depot and at a point between two crossings. Parallel with the railroad tracks is a public road. There are only two houses located within the town limits beyond the point where the accident happened, one on one side of the Kentucky river, and the other on the other side. There was very little use of the track as a walkway or driveway by the inhabitants of Blackey, but it was used for such purposes by people who lived outside the town. On the question of the extent of such use by the people, the evidence is as follows: H. B. Branson said: "The public in passing there to Blackey, the walkers all went that way, comparatively all, and part of them rode right over the road there. . . . Just comparatively all the time, there never was but a few minutes but what somebody was passing on it." T. A. Griffith's statement was: "Used regularly all the time, was then and now, too." The language of Anderson Cornett is: "They used it always . . . every time I would be there they would be traveling it . . . all times through the day, I guess, when I would be there." F. F. Sumner's statement was: "It was used as a general passway, the people traveled that instead of the county road, because the county road was very muddy and people always traveled on the railroad. Nearly all of the walkers and a portion of the riders go that way today. . . . It was traveled all the way along, could hardly look out but what I could see some one coming or going." Almander Whitaker, who was in Blackey every few days, said that the railroad track was used by people walking and riding, "many of them, you can't hardly look out but what some one is passing there, most any time you go in sight of the place." They passed on the track and "by the side of it." Fernando Cornett, who was in Blackey on an average of twice a week, testified that there were several people who used the track. "Everybody used it as kind of a pathway, walking back and forward. . . . It was a continual thing, you might say." Buck Gumm, who kept a store in Blackey, made the following statement: "Well, sir, people walked the track all the time, used it in coming in and out there. . . . It was daily. No days, I reckon, but what somebody walks that way, did then and do yet." On being asked how frequently during that time, he said: "I could not tell, it was just simply continuously coming up and down there all the time." Dr. Gid Ison's evidence was as follows: "They were passing all times of the day,

you might say, maybe as many as—I will say from ten to thirty people passing along there each day.''

The determining factor in a case of this kind is not the habitual use of the track by the public. It may be habitually used by all the public that pass that way, but the number of persons so passing may be very small. Therefore, in order to convert trespassers into licensees, it is necessary that the track be habitually used by the public in such large numbers that the presence of persons on the track should be anticipated. Cornett's Admr. v. L. & N. R. R. Co., 181 Ky. 132, 203 S. W. 1054. Of all the witnesses who testified on the question only one made any estimate of the number of persons using the track, and he fixed the number at from ten to thirty each day. The statements of the other witnesses conveyed no definite idea as to the number of persons using the track. All that they say may be true, and yet the number may not exceed that fixed by Dr. Ison. We have held that the use of a railroad track by a much larger number than thirty did not convert them from trespassers into licensees, to whom precautionary duties were due, Willis' Admrx. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18, and there is no escape from the conclusion that the evidence in this case is wholly insufficient to show that decedent was a licensee, and the motion of appellants for a directed verdict should have been sustained. L. & N. R. R. Co. v. Stidham's Admrx., 194 Ky. 220, 238 S. W. 756.

We may further add that a railroad company is not liable for damages for negligence arising out of the operation of a railroad during Federal control, and that the motion of the Louisville & Nashville Railroad Company to quash the process against it should have been sustained. Rogers Brothers Coal Co. v. Hines, Director General, etc., 193 Ky. 795, 237 S. W. 1058.

Judgment reversed and cause remanded for new trial consistent with this opinion.