## Chesapeake & Ohio Railway Company, et al. v. McMath's Administrator.

(Decided March 23, 1923.)

### Appeal from Bracken Circuit Court.

1. Appeal and Error—Appeal by Defendant Against Whom Judgment was not Rendered Must be Dismissed.—Where a judgment in an action against a railroad company and its engineer was rendered only against the company, and not against the engineer, an attempted appeal as to the engineer must be dismissed.

2. Railroads—Required to Protect Pedestrians Only if Track is Extensively Used in Thickly Settled Community.—The doctrine that a railroad company is bound to anticipate the presence of persons on its tracks, and to operate its trains there with due regard for their safety, applies only where the track is extensively used by persons in a thickly populated community, whether in or out of an incorporated town.

3. Railroads—Evidence Showing at Most 75 Trips Per Day by Pedestrians Does not Establish License.—Evidence as to the use of railroad tracks by pedestrians in the outlaying portions of a small incorporated town, which showed that at most 75 trips per day were made by persons along the track, while other witnesses for plaintiff estimated the number as much smaller, is insufficient to warrant the jury in finding that the track was extensively used by pedestrians, so as to require the railroad company to operate its trains thereon with due regard to the safety of persons who may be on the track.

4. Railroads—Occupation of Former Street Does not Impose Duties on Railroad at Point Outside the Street Limits.—The fact that railroad tracks for part of the way through an incorporate town were located on a former street does not impose on the company any duties toward a pedestrian walking along the tracks at a place outside of the limits of the former street, even if the street had not been abandoned.

WORTHINGTON, COCHRAN, BROWNING & REED for appellants.

SLATTERY & REES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At about 5:30 a. m. on February 11, 1916, R. B. McMath, while walking on or near the east-bound track of the appellant and defendant below, Chesapeake & Ohio Railway Company, was struck and killed by a manifest east-bound freight train at a point in Bracken county between nine hundred and one thousand feet west of the depot in the town of Foster, which is one of the sixth class and has a population of between one hundred and fifty and two hundred inhabitants. This action was filed by his administrator, the appellee herein, against the appellant and defendant company and its engineer in charge of the colliding train, to recover damages sustained by defendant's estate on account of the loss of his life.

As a supporting ground for the action it was alleged in the petition that the accident occurred within the corporate limits of the town of Foster and that the track upon which decedent was killed "had been continuously used by pedestrians since the construction of the railroad and was being so used by a large number of persons as a passway at the time the said R. B. McMath was struck and killed," which fact was known to the defendant, and that they failed to observe the necessary precautionary duties due to the decedent while exercising

his alleged license privilege in using the track as a walk way at that place. The answer denied the averments of the petition and affirmatively pleaded contributory negligence on the part of the decedent. The reply made the issues, and upon trial the court submitted them to the jury under instructions not complained of and it returned a verdict in favor of plaintiff for the sum of forty-five hundred dollars ($4,500.00), upon which judgment was rendered against only the corporate defendant, and which the court declined to set aside on a motion made for that purpose followed by this appeal.

While the verdict was in favor of plaintiff and was sufficient in form to authorize a judgment against both defendants, none was rendered against the engineer and individual defendant although he appears in this record as a party appellant. Under those circumstances the attempted appeal as to him should be and it is dismissed. The railway company, against whom only a judgment was pronounced, urges but one ground for its reversal, which is that the court erred in overruling its motion for a peremptory instruction in its favor at the close of plaintiff's testimony and in refusing to sustain the same motion made at the close of all the testimony, the determination of which requires a brief statement of the substance of the proof.

The town of Foster is located on the Ohio river and its southern and western boundary is Holt's creek which the track of the defendant company crosses about eighteen hundred feet west of the depot in Foster. Between the depot and where that creek runs under the track are only two houses that are located near the track and only one of them faces or fronts it; the other one is located on a road or street which it fronts and is about two hundred and fifty feet from the track. Further to the south and west from the depot and between Grace and Prible streets, are some four or half dozen houses but they are located a considerable distance from the railroad and near the creek, and between them and the railroad are other roads or streets. Decedent's dwelling, which he had left but a short while before his death, is still further away and west of the point where the railroad track crosses the creek. About three miles west from his dwelling is the small village of Carntown, and between it and decedent's residence is only one house. Some four or five farm houses are located back from and south of the river and south of the railroad track

and they are on or near a public road or pike leading to Foster. The country west of the town and for a considerable distance southwest is not only exceedingly rough, but sparsely settled.

The testimony of the administrator, who is a brother of decedent and lived with him, as well as some of the other witnesses he introduced, testified that the persons who occupied the farm houses would on occasions, and particularly during times of high water, go through the adjoining farms to the railroad track and walk it to the town of Foster, and under the same circumstances some of the children in those houses would travel along the track in going to school, but the same witnesses say that on other and more numerous occasions the occupants of those houses would travel the road into Foster. Some of the witnesses testifying for plaintiff, when interrogated as to the amount of travel on the track, would say: "It was considerable" or "A good many people travel that way," and, as in a number of cases cited below, they employed other general terms expressing in an indefinite way the witnesses' idea of the extent of the travel; but when called on to give the average number of trips per day made by persons using the track as a walk way at the point of the accident the administrator testified, "I expect that there would be fifty or seventy-five people go over it during the day." He was further asked and answered, "You mean there would be fifty or seventy-five trips; not fifty or seventy-five people? A. I mean trips." Mrs. McMath, the widow of decedent, testified to no definite number of people using the track, but said that members of her family and the people living over the hill south from the river, including in all seven families, were the ones who used the track mostly. Helen McMath, decedent's daughter, was asked: "Q. In your judgment, would you say, as many as twenty-five people a day" (would use the track)? She answered, "I have some days; not every day." Lee Routt testified that some days he would not see more than five or six persons walking the track and upon being asked: "Q. What would you say would be the average number of people you would see on the tracks at the time you were at the station?" He answered, "Twenty, more or less, every day," and when asked the extent of the travel by pedestrians of the track between Foster and Carntown, he answered, "Well, it wasn't crowded." Jesse Slack was asked: "Q. How many people a day in your judg-

ment use that track, going back and forth where Mr.
McMath was killed? A. Oh! twenty to twenty-five."
At another place he said the number would possibly be
"twenty-five or thirty a day." Ralph Slack testified that
the average number of pedestrians using the track at
that point per day was fifteen or sixteen persons. He
was further asked: "Well, when it (the river) wasn't
up, didn't they use it? Not to any great extent." E. W.
McAtee, a justice of the peace and a merchant in Foster,
testified that "I have seen in a day as many as fifty peo-
ple" walking the track. James Powers, the section fore-
man on that territory, and who was introduced by plain-
tiff, stated, "Well, taking on an average, one day after
another, I don't suppose there would be more than five
or six people walking the track each day." Charlie Carr
was asked: "What, in your judgment, would be the
average number of people in a day using the track?"
and answered, "I don't believe, take it on an average
for any length of time, there would be more than four
or five people."

Each of the witnesses referred to was introduced
by and testified for plaintiff, and their testimony was all
that was heard upon the subject. From the testimony,
as we have taken it from the record, it appears that
the highest number of trips per day by pedestrians on
the track at the place of the accident was placed at seven-
ty-five by the administrator, and down to as low as four
by some of the other witnesses. No witness besides
plaintiff himself placed the number higher than fifty
persons. Some of those witnesses testified that occasion-
ally one or two persons from Carntown, but not exceed-
ing upon an average once in each two weeks, would
travel the track between that point and Foster, and it
was furthermore shown that at appropriate seasons of
the year there was some travelling of the track by the
disciples of Isaac Walton in going to the mouth of Holt's
creek, and the witnesses said that there was more
travelling on the track on Sunday than any other day of
the week.

Under the above condition of the proof it is seriously
insisted by counsel for plaintiff that the case is one call-
ing for the application of the doctrine announced in the
cases of Illinois Central R. R. Co. v. Murphy's Admr.,
123 Ky. 787, and a host of others following it and some
preceding it, and that the court did not err in overruling
defendant's motion for a peremptory instruction in its

favor. The doctrine relied on is, in substance, that if a railroad company acquiesces in the use of its track as a walk way by a large number of the public, either in cities and towns or other thickly populated communities, for a sufficient length of time to give it and its agents and servants operating its trains notice of such user the duty is then enjoined upon the latter to anticipate the presence of persons on its track at such places and to operate its trains there with due regard for the safety of those who might be walking on the track, and to exercise precautionary measures looking to their safety, such as maintaining a lookout ahead, reducing the speed of the train, the giving of warning signals, etc. But, all the cases hold that a prerequisite to the imposition of such precautionary duties is, that the necessary extensive use of the track in a thickly populated community, whether in or out of an incorporated town, must be proven or found to be true by the jury upon sufficient supporting evidence. No case has fixed the precise number of daily users of the track which would *ipso facto* call for the imposition of the burdens of the rule relied on and below which they would not attach, but in some of them it was held that the use of the track by as many as one hundred and twenty-five (125) persons per day was insufficient to impose the precautionary duties on the servants of the company, one of which is the case of Willis' Admr. v. L. & N. R. R. Co., 164 Ky. 124, wherein it appeared by the testimony of a number of witnesses that there was a daily travel by pedestrians on the track of as many as one hundred and twenty-five persons, and that the place of the accident was surrounded by a number of farm houses, and the vicinity was more thickly populated than in this case or than the average rural community; but we held that the defendant was not liable under the invoked doctrine in this case, and in doing so said: "It is true there was evidence by perhaps one or more witnesses to the effect that as many as 125 people used these tracks every day, but other witnesses, with equal opportunities of knowledge, said the number of persons would be probably 15, except on some special occasion, when there was unusual travel. But if the number should be placed at 125, this would not be sufficient under the conditions surrounding this territory to convert these users into licensees, as it seems perfectly apparent from the undisputed evidence as to the number of people in the territory adjacent to the rail-

road and around and about Benton and the residence of decedent, that it is not what would be called a populous community in the law controlling this subject. It also seems preposterous to say that as many as 125 persons a day in a community like this would travel back and forth on the railroad track. It is, however, entirely probable that the few persons who lived near these tracks used them daily, or whenever they wanted to go any place; but so do people all over the state who live near railroad tracks in the country use them as highways. The persons who use these tracks seem to think they have the right to do so, although they can not help knowing how dangerous it is, and that they take their lives in their hands every time they put foot on a railroad track in the country where many trains are running at high speed, and under no general duty to keep a lookout for or give warning to trespassers."

The rule, as there laid down, was expressly referred to and followed by this court in the case of McKnight's Admr. v. L. & N. R. R. Co., 168 Ky. 86, and in a number of succeeding ones, the latest of which is L. & N. R. R. Co. v. Stidham's Admrx., 194 Ky. 220. In the McKnight and Stidham cases others from this court are referred to which it is unnecessary to even cite much less incorporate their facts in this opinion. Other illustrative and pertinent ones from this court are: L. & N. R. R. Co. v. Redman's Admr., 122 Ky. 392; C. & O. Ry. Co. v. Nipp's Admr., 125 Ky. 49; Cumberland R. R. Co. v. Walton, 166 Ky. 371; Watson's Admr. v. C. & O. Ry. Co., 170 Ky. 254; Helton's Admr. v. C. & O. Ry. Co. 157 Ky. 380; Sublett's Admr. v. Same, 146 Ky. 530, and Howard v. I. C. R. R. Co., 189 Ky. 60. The accident occurred in some of those cases within the corporate limits of a town, but the court said that the application or rejection of the doctrine should be made to turn, not upon the fact that the accident occurred within or without the limits of an incorporated town, but upon the fact of the extent of the use of the track by members of the public in populous communities, upon the idea that extensive use at such places was sufficient to give notice of that fact to the company and to impose the corresponding precautionary duties upon it, its agents and servants. Throughout the cases in which the question has been presented it is stated that the use of the track by the members of a family or a few families was not sufficient to raise the duty on the part of the defendant to exercise the re-

quired precautionary measures as to them, and it is, furthermore, pointed out in the opinions that to extend the doctrine would so hamper the transportation of commerce in which the carrier is engaged as to reduce the ability of the railroad companies of the country to discharge the duties assumed by them and imposed upon them by law. It is also said in some of the opinions, and which may truthfully be repeated in this one, that there is scarcely a section of railroad track in the country (with perhaps the exception of some portions in wholly unsettled sections), where there is not more or less travel by pedestrians on the railroad track and it is by no means uncommon for as many as one hundred or more trips per day to be made along the greater portion of the railroad trackage of the country. If such sporadic trespassing could be given the effect of establishing the duty on the part of the carrier towards such trespassers, as is herein contended for, it would destroy one of the chief benefits of railroad transportation and would cause loss to the patrons of that industry, and to others indirectly affected, for no other reason than to protect the occasional trespasser who has no higher claim to the use of the track than his own personal convenience, and who is compelled to know that he is travelling upon dangerous ground. It is because of such conditions that the doctrine relied on has been confined to populous communities and where the use of the track was by a large number of people and to such an extent that due regard for the safety of humanity requires the exercise of the imposed duties. Clearly, in the light of the adjudged cases, as well as the reasons underlying the doctrine, it has no application to the facts in this case though the accident did happen within the corporate limits of the town of Foster, but beyond the limits of the built up portion of the town and in a sparsely settled section.

But it is insisted that the railroad track where decedent was killed occupies what was formerly Front street in the town, and because of that fact that it was the duty of defendants in operating the train at that point to exercise due care and caution for the safety of those who might be using that portion of the track, and some cases are cited in support of that contention. Without stopping to consider them, or to determine whether the doctrine there announced should be applied under the proven facts, it is sufficient to say that the ground upon which the contention is based is not sustained by

the testimony. On the contrary it is shown by plaintiff himself that only a portion of what was formerly Front street is now occupied by the railroad track and it is near the depot, and that the track where the accident happened is not located on any portion of what was formerly Front street. So that, if we were to give no consideration to the undisputed testimony that Front street was abandoned and the travel on it directed over other streets after the building of the railroad track, it would still be true that the testimony does not bring the case within the doctrine of those relied on. It is our conclusion, therefore, that the court erred in submitting the case to the jury and that the peremptory instruction should have been given.

Wherefore, the judgment is reversed with directions to set aside the verdict, and upon another trial to sustain the motion if the evidence is substantially the same, and for other proceedings consistent with this opinion.