# Louisville & Nashville Raiload Company v. King.

(Decided October 2, 1928.)

WOODWARD, WARFIELD & HOBSON, BLACK, BLACK & OWENS and ASHBY M. WARREN for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

During the years 1923 and 1924, the appellant made extensive improvements on its Cumberland Valley Divi-

sion, particularly in Knox county, Ky. The improvements consisted of double-tracking its line with the grading made necessary by the work. It entered into a contract with the Nichols Construction Company to perform the work necessary in making the improvements. The contractor employed a number of men in its prosecution of the work. The appellee, Josiah King, was employed by the contractor, and it was his duty to operate a drilling rig, and drill holes necessary to place explosives so that blasting might be carried on. In May, 1923, the appellee, who at the time had been working for the contractor for many months, and while he was going to his work and walking on the tracks of appellant, was struck by one of its passenger trains and injured. The accident happened about 5:30 a. m. and about one mile distant from the place where his duties required him to work. On the trial of the case he was awarded damages in the sum of $1,200.

The work which was at the time carried on by the contractor was between Barbourville and Elys. The first station south of Barbourville is Artemus, which is between Barbourville and Elys. The distance from Barbourville to Artemus is about 4 miles. South of the depot at Barbourville, and a distance of about 100 feet therefrom, a county road crosses the railroad track and runs on the east side of the railroad right of way southward. This road remains on the east side of the railroad tracks until it reaches Artemus, and it there crosses the tracks again to the west side. Between the county road and the railroad tracks from the two points mentioned where the road crosses the tracks is property owned by private individuals. On the west side of the railroad tracks between Barbourville and Artemus is the Cumberland river, and there is no bridge crossing it between Barbourville and Artemus. There is no railway station between Barbourville and Artemus, and there is no public road between the two stations which crosses the railroad tracks except the one just south of the depot at Barbourville.

It appears that the crew with which appellee was working was employed between Barbourville and Artemus, and any person desiring to go from Barbourville to the place where the work was in progress must either walk on the railroad, or follow the county road until a point was reached opposite the place where the work was

going on where he would have to pass over the land of some individual to the railroad right of way.

It is the contention of appellee that he was either a licensee or an invitee on the railroad tracks at the time he received his injury, and that, by reason of his being one or the other, it was the duty of those operating the train to maintain a lookout for him and to give reasonable and timely warning of the approach of the train. On the other hand, it is contended by the appellant that he was a trespasser, and that appellant owed him no duty until the discovery of his peril. Appellee introduced his proof, and it is from a consideration of that proof alone that the court must determine whether he made a case for the jury, as appellant offered no evidence on the trial.

A railroad right of way is private property, and the public has no right to use the railroad tracks as a passway, and no member of the public has any right to be upon or about the railroad tracks except at places such as a crossing where the public has a right to enter upon the right of way in passing from one place to another. If a member of the public is on the railroad right of way or tracks upon the invitation, or with the expressed permission of the railroad company he is entitled to such reasonable care on the part of the railroad company as is necessary to avoid injury to him. If a large part of the public has' so habitually and continuously used the railroad right of way and tracks to such an extent that the railroad company is put on notice that some member of the public will probably be on the tracks at a particular point where the tracks have been so used, the duty is placed on those in charge of the trains of the company to maintain a lookout duty and to give such reasonable signals as may be necessary to warn the public of the approach of the trains.

There is no contention that appellee was on a crossing, or that he had any right on the tracks, unless it was as an invitee or as a licensee.

The distinction between a licensee and an invitee is sometimes shadowy. We have no difficulty, however, in reaching the conclusion that appellee was not an invitee at the time of his injury. He was on the tracks admittedly more than a mile away from the place where he worked, and we find no evidence in the record which is

convincing that the appellant believed, or had any reason to believe, that its tracks at the point where appellee was injured would be used by the employees of the construction company in the prosecution of its work. We do not mean to hold that, if it had been necessary to use the tracks at this particular place by those engaged in the construction work, it would constitute the members of the construction company invitees. Whether they were invitees when on the track at the place where the work was being prosecuted is a question unnecessary to determine in this case. Appellant cites the case of L. E. Meyers' Co. v. Logue's Adm'r, 212 Ky. 802, 280 S. W. 107, in support of his contention that he was an invitee at the time of his injury. It was held in that case that an invitee is one who goes to a place of business upon the expressed or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with the business of the owner or occupant which is there being carried on. In that case the man who was killed had been working for a contractor engaged in the construction of a dam across Dix river. He notified his foreman that he was going to quit work, and was then notified by the foreman that he could not get his pay until the next day. On the following day he returned to receive his pay, when the cashier directed him to get a card signed by the foreman. It was necessary for the man to cross the river to procure the signature of the foreman, and, in making the crossing, he was struck by a car operated on a narrow gauge railroad. It was held in that case that he was an invitee, and the decision on that point is not subject to attack. The man had actually been invited to return for his pay, and he had been directed to search out the foreman and get a card signed which was necessary before he could receive his pay. The facts in the case under consideration are not similar. No one had invited appellee to walk on the railroad tracks, and, if it should be considered that the making of the contract with the construction company was an implied invitation to all of its employees to use the railroad tracks, such use would have to be confined to the place where the work was actually going on, or to such points on the tracks as it was reasonably necessary to use in connection with the work. We must hold, therefore, that appellee was not an invitee.

The evidence is meager which shows, or tends to show, that the railroad tracks at the point where appellee was injured had been used habitually and continously as a passway by any considerable number of people. If the evidence is considered which relates only to the use of the track at that point as early as 5:30 a. m., we find almost no evidence which shows that the tracks were used by any one at that hour in the morning. It is true there is proof that some of the employees of the construction company spent the night in Barbourville and walked to their place of work using the railroad tracks. The evidence is indefinite and uncertain as to the number using the tracks. It might be surmised that, because the construction company employed a large number of men, they went back and forth from Barbourville each day. The witnesses are uncertain as to the number who so used the tracks.

In the case of Hines, Director General, v. Wilson's Adm'r, 191 Ky. 543, 231 S. W. 23, this court held that it was a question for the jury to determine whether the tracks of a railroad company were habitually used at the time decedent was killed by such large numbers of persons as to impose upon the company the exercise of the duties of maintaining a lookout and giving signals. The rule was correctly stated in that case, but there was a conflict in the evidence as to the habitual use of the railroad tracks at the time and place where decedent came to his death.

Turning now to the evidence, we find that appellee himself stated that the railroad tracks had been used between the crossing near Barbourville and the place where he was at work, by people walking and hauling timber and coal and one thing and another across and up and down the track. He did not undertake to state whether such use of the tracks was continuous or at what hours in the day the tracks were so used. It is true he had stated that the construction company employed more than 100 men, and he also stated that in getting to their work they traveled the railroad, but he does not point out any particular part of the tracks which were used. Another witness testified that the tracks had been used, and that the construction company employed about 100 men, and that these men used the railroad tracks. He was asked to state to what extent the men traveled up and down the track and his answer was, "Well, every

time any of us had to come towards town we always come that way.'' He also said that, when they returned, they went back on the railroad tracks. He then testified that the foreman rode a horse up and down the railroad tracks, but he does not undertake to say whether he rode the horse on the railroad tracks from Barbourville to the place where the work was going on. He further testified that he had snaked timbers across the railroad tracks. This same witness stated that the men went to work at 6:30 in the morning and quit at 5 in the afternoon. He also stated that it would probably require half an hour to walk from the railroad crossing near Barbourville to the place where the work was in progress. Another witness stated that he knew that they all worked and walked up and down the track to work and also walked back. He stated that he left about 5 in the morning. The witness was then asked to state how many men worked for the construction company, and he stated that there must have been 150, and that 4 or 5 acres were covered with shacks.

We have referred to the evidence quoted in the brief of appellant, and we find nothing which substantially shows that the railroad tracks at the place of injury had been habitually and continuously used at the point where appellee was injured to such an extent as to require those in charge of appellant's trains to maintain a lookout and give signals. We do not find that appellee has established that he was a licensee on the railroad tracks at the time of his injury, or that there is any evidence offered by him from which the jury might so conclude. He has not brought himself within the rules announced in the many cases which have been written on the subject, among which are L. & N. R. R. Co. v. Banks' Adm'r, 195 Ky. 804, 243 S. W. 1018; Willis' Adm'x v. L. & N. R. R. Co., 164 Ky. 125, 175 S. W. 18; Cornett's Adm'r v. L. & N. R. R. Co., 181 Ky. 132, 203 S. W. 1054; C. & O. Ry. Co. v. McMath's Adm'r, 198 Ky. 390, 248 S. W. 1051; Lawson v. L. & N. R. Co., 213 Ky. 767, 281 S. W. 994; Howard v. Illinois Cent. R. Co., 189 Ky. 60, 224 S. W. 635.

The evidence introduced by appellee for the purpose of showing that the tracks at the point where appellee was injured were habitually used by the public in such large numbers that the presence of persons on the tracks should have been anticipated by the railroad company was not sufficient to take the case to the jury.

If on another trial the appellee should make out a case for the jury, the court should so modify the instructions as to require the jury to believe that the habitual use of the tracks, if any such use, had been by a large number of persons. The court reserves all questions not specifically determined by this opinion.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.