# Coleman's Adm'r v. Chesapeake & O. R. Co. et al.

(Decided Nov. 15, 1932.)

A. F. CHILDERS for appellant.

KIRK & WELLS, STRATTON & STEPHENSON, and BROWNING & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The sole question on this appeal is whether the trial court, at the conclusion of the evidence offered by appellant, properly directed a verdict in favor of appellees.

On July 30, 1929, George Coleman was struck and instantly killed by a west-bound Chesapeake & Ohio passenger train just east of Harold Station, in Floyd county. East of the place of the accident there is a curve in the track and also a sloping hillside. Frank Marrs, who ran the pumping station, which is east of Harold Station, testified that shortly before the accident Coleman was running down the track, and asked if the train stopped at the water tank. He replied that it did not, and Coleman, who had not come to a halt, continued to run down the main line track between the

rails. He also told Coleman that he had time to make the train, but did not know whether Coleman heard him or not. About that time the train was approaching, and the alarm whistle was sounded. Coleman had ample time to get off the track after the alarm was given. As the train passed, it was making the usual noise. The train was a little ahead of time. Coleman never looked back. Looking down the track, he saw a crowd gathering, and on going down there discovered Coleman's body, which was lying about six rail lengths, or a distance of 216 feet, below the pumphouse. W. T. Shelow was the fireman on the engine. As the train was going around the curve, he cut off the steam, and they were just coasting in. He was keeping a lookout, and had his eyes on the track as they came around the curve. When he first saw Coleman, Coleman was running down the track in front of the train, and was about 150 to 200 feet ahead of the engine. Coleman had his coat under his arm, and never looked back. The train was running between 20 and 25 miles an hour. He was always looking at the track, and saw Coleman just as soon as he could see him. As soon as he saw Coleman, he warned the engineer, who immediately applied the emergency brakes, sanded the track, and sounded the usual warning signals. The train could have been stopped in from 400 to 500 feet. Ballard Morris, who had had 10 years' experience as a passenger brakeman, expressed the opinion that a train, consisting of six cars and an engine, and moving from 20 to 25 miles an hour, could have been stopped in 250 feet. W. J. Ward, civil engineer, made a map of the grounds and gave it as his opinion that any one on a railway engine at the whistle post above the pumphouse could see from that place to the point where Coleman was killed a distance of 610 feet. He also measured the distance from where Coleman was killed down to the water tank, and found it to be 310 feet.

At the time of the accident Coleman was a trespasser, and those in charge of the engine owed him no duty except to use ordinary care with the means at their command to avoid injuring him after his peril was discovered. Louisville & N. R. Co. v. Benke's Adm'r, 176 Ky. 259, 195 S. W. 417. The rule is conceded, but it is insisted that, notwithstanding the fireman's evidence that at the time he discovered Coleman's presence on the track, Coleman was not more than 150 or 200 feet

ahead of the engine, his further statement that he had his eyes on the track and saw Coleman as soon as he could have been seen, coupled with the evidence of Ward, civil engineer, that it was about 600 feet from the place where Coleman was killed to the point where he could have been seen by the fireman coming around the curve, and the evidence of Morris that the train could have been stopped within 250 feet, was sufficient to take the case to the jury. We have ruled in several cases that evidence that the injured party was on the track, that the track was straight, that the view for a long distance was unobstructed, and that the engineer was looking toward the trespasser, was sufficient to take the case to the jury. Becker v. L. & N. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459; C. N. O. & T. P. R. Co. v. Dickerson's Adm'r, 102 Ky. 560, 44 S. W. 99, 19 Ky. Law Rep. 1817; L. & N. R. Co. v. Bell, 108 S. W. 335, 32 Ky. Law Rep. 1312. But the situation here presented is not of that character. The track was not straight, and the view was not unobstructed. On the contrary, the train was coming around the curve, and there was a sloping hillside. Furthermore, Coleman was running down the track, and, for aught the evidence shows, his body may have been thrown forward several feet. In the very nature of things he was not at the place where his body was found when the train came around the curve, but was several feet nearer to the engine, and evidence that it was 610 feet from where his body was found to the place where he could have been seen was not sufficient to show where he was when his peril was actually discovered, or to contradict the evidence of the fireman that he was only 150 or 200 feet away, and, taking into consideration the fact that it required at least a second or two for the fireman to take in the situation and inform the engineer that there was a person on the track, and the uncontradicted evidence that four or five seconds were consumed in sounding the alarm blast and putting the brakes in emergency, during which the train was moving at the rate of about 30 feet a second, we are constrained to the view that there was no evidence that those in charge of the engine failed to use ordinary care with the means at their command to avoid injuring Coleman after his peril was actually discovered.

Judgment affirmed.