ROBERT DRAPER v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant.—156 S. W. (2d) 626.

Division One, June 12, 1941.

Rehearing Denied, July 25, 1941.

Motion to Transfer to Banc Overruled, October 30, 1941.

Motion to Reconsider Order of October 30, 1941, Overruled, December 12, 1941.

James E. Garstang and Harold R. Small for appellant.

N. Murry Edwards, Robert A. Harris and Douglas H. Jones for respondent.

HYDE, C.—This is an action for damages for personal injuries. Plaintiff obtained a verdict for $55,000. Defendant has appealed from the judgment entered.

Plaintiff was run over and his legs were cut off by defendant's switch engine at Louisville, Kentucky, in August, 1937. A suit was filed there and also in St. Louis in 1938. Defendant's answer contained a plea in abatement on the ground that this same cause of action was pending in the Circuit Court of Louisville, and a plea to the jurisdiction upon the ground that the prosecution of the cause in St. Louis would place an undue burden upon interstate commerce, in violation of Article 1, Sec. 8 of the Constitution of the United States. The trial court, after separate hearing, found that the signature on the contract authorizing the Kentucky suit was not plaintiff's and that he was not bound thereby. The plea in abatement (and also to the jurisdiction) was overruled by the court's order to proceed to trial on the merits. Defendant assigns this action as error. After the first hearing of this appeal, we handed down an opinion (at

the May Term, 1940) holding that, while the plea in abatement was properly overruled, the plea to the jurisdiction should have been sustained. However, on motion of plaintiff, a rehearing was granted.

We adhere to our ruling that the plea in abatement was properly overruled both because there was substantial evidence to support the finding that plaintiff never signed nor authorized the signing of the contract authorizing the Kentucky suit; and because "the general rule, that the pendency of a prior action, between the same parties, for the same cause of action, whether at law or in equity, may be pleaded in abatement of a subsequent action therefor, . . . applies only where two courts have concurrent jurisdiction of the same cause of action and where the prior action is pending in one of such courts, and the subsequent action in another; and therefore such a plea, ordinarily, will not be sustained where the prior action is pending in a court of foreign or different jurisdiction, or, as otherwise expressed, ▮ where the two actions are pending in courts of different sovereignties, such as in courts of different states, ' . . . or countries, or in a federal and also in a state court." [1 C. J. S., p. 97, sec. 63, also sec. 65. See also 1 C. J., p. 84, sec. 113; 1 Am. Jur., p. 42, sec. 39; Kansas City Gas Co. v. Kansas City et al., 198 Fed. 500; Silent Automatic Sales Corp. v. Stayton, 45 Fed. (2d) 476; Chicago, R. I. & P. R. Co. v. Schendel, 279 U. S. 611, 46 Sup. Ct. 420, 70 L. Ed. 757, 53 A. L. R. 1265.]

The relevant facts on the plea to the jurisdiction are that plaintiff at the time of his injury in Kentucky was a resident of Chattanooga, Tennessee; and that, at the time of the trial, he resided at Paducah, Kentucky. Defendant is a Kentucky corporation, not licensed to do business in Missouri, and has no railroad line in Missouri. Defendant's Missouri business, both passenger and freight, is entirely interstate. However, defendant has a ticket office and a freight depot in St. Louis, and its trains, both passenger and freight, run into St. Louis, but are handled from East St. Louis, Illinois, by engines of the Terminal Railroad Association over its tracks. Defendant's freight trains, departing from St. Louis, are likewise handled by engines of the Terminal to East St. Louis. Its passenger trains enter and depart from the Union Station. Defendant brought 19 witnesses, mostly its employees, from Louisville to St. Louis. Defendant did not actually pay out money for transportation of its witnesses, but the daily cost of their maintenance was about $157. The trial commenced on Monday, November 21, and closed Saturday, November 26.

Section 874, R. S. 1939, Section 723, Mo. Stat. Ann., p. 936, provides: "Suits against corporations shall be commenced either in the county where the cause of action accrued, or in case the corporation defendant is a railroad company owning, controlling or operating a railroad running into or through two or more counties in. this state, then in either of such counties, *or in any county where such corpora-*

*tions shall have or usually keep an office or agent for the transaction of their usual and customary business."* (Italics ours.) The italicized part of Section 723, under the facts, authorized, we think, the commencement of this cause in St. Louis, unless jurisdiction is denied under the theory that to prosecute the cause in St. Louis would place an undue burden on interstate commerce.

In Busch v. L. & N. R. Co., 322 Mo. 469, 17 S. W. (2d) 337, certiorari denied 280 U. S. 569, 50 Sup. Ct. 27, 74 L. Ed. 622, it was held that the plaintiff, who was not a resident of Missouri, could sue this same defendant in this State for damages for personal injuries sustained elsewhere. This court, in that case (17 S. W. (2d) l. c. 339) said:

"Defendant admits that it was engaged in interstate commerce within the state, and 'the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character.' [International Harvester Co. v. Kentucky, 234 U. S. 589, 34 Sup. Ct. 947, 58 L. Ed. 1484. (234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479.) . . . This case is clearly distinguishable from Davis v. Farmers' Co-operative Co., 262 U. S. 312, 43 Sup. Ct. 556, 67 L. Ed. 996.] A foreign corporation must submit, if there is jurisdiction, to the requirements of orderly, effective administration of justice, although thereby interstate commerce is incidentally burdened. [Hoffman v. Missouri ex rel. Foraker, 274 U. S. 21, 47 Sup. Ct. 485, 71 L. Ed. 905.]''

In the Davis case, and others cited by defendant, the company had only a soliciting agent in the state in which it was sued. That has never been held sufficient to confer jurisdiction, by the United States Supreme Court; but clearly that is not the situation here because defendant continuously carried on business in Missouri by running its trains into and out of this State every day. This distinction was made by this court in Meek v. New York, C. & St. L. R. Co., 337 Mo. 1188, 88 S. W. (2d) 333, certiorari denied 297 U. S. 722, 56 Sup. Ct. 668, 80 L. Ed. 1006. [See also International Milling Co. v. Columbia Transportation Co., 292 U. S. 511, 54 Sup. Ct. 797, 78 L. Ed. 1396.] Upon the authority of these cases, we hold that the plea to the jurisdiction was properly overruled.

■ Defendant's contention on the merits is that its peremptory instruction, in the nature of a demurrer to the evidence, should have been given. The case was submitted solely on the Kentucky last chance theory that defendant's "fireman . . . *saw* ■ plaintiff in a position of imminent danger of being struck by said engine . . . in time thereafter for defendant . . . in the exercise of ordinary care and with the means and appliances at hand . . .

to have caused said engine and string of cars to be stopped or to have sounded a warning of its approach.'' Plaintiff was injured near the south city limits of Louisville. Defendant's two main line tracks there ran almost due north (slightly west); and were fenced with a wire fence on the west, where there was open unsettled country beyond these tracks. There was also a county road parallel to the tracks on the west side of this wire fence. There were two switch tracks east of the main line track. The one nearest the main line was called the ''scale track'' and the one farthest east was called the ''run around'' track. East of these tracks was the plant of the Wood Mosaic Company which was fenced with a board fence. Just north of the Wood Mosaic plant, there was an east and west road called Strawberry Lane. Defendant's switch yards, called Strawberry Yards, which were outside the city limits, were on the east side of the main line, extending to the southeast. These yards had formerly been in active use but at this time were used for storage and for dismantling old cars. They began about 900 feet south of Strawberry Lane and there was a yard office, at that point, at the north end of the yards. Seven hundred feet north of the yard office (193 feet south of Strawberry Lane) there was a scale house (for weighing cars on the scale track) between the two switch tracks. Plaintiff's testimony was that he was run over on the east (run around) track about fifty feet south of the scale house.

The movement under way, when plaintiff was injured, was a switching movement with the object of placing 19 cars on a storage track behind the yard office. The switch engine brought the cars from the Napother yards south of the Strawberry Lane yards. Plaintiff called as a witness the switchman in charge who said that he gave the starting signal to the fireman. He said that he swung off about 100 feet north of the yard office ''because they was working around a curve and I had to walk back to that curve to get their signal;'' that he intended to signal to the men on the engine to stop when the last car went over the switch, onto the run around track, and then throw this switch for them to back up; and that ''about when my arms came down with the signal he had just stopped;'' but that ''they didn't stop on my signal, they had stopped on account of Draper.'' The movement north was upgrade so that the engine made a lot of noise. This switchman also said that the automatic bell was ringing (but there was no whistle); that ''there wasn't any other train or engine within at least a mile of there;'' and that ''anybody could hear it at least with their ears—good ears—at least a mile; everything was quiet.'' There was grass and weeds between the two switch tracks and around the scale house about fifteen inches high. Plaintiff was found in these weeds on the west side of the run around track near the scale house.

Plaintiff's account of his injury (which occurred about two o'clock on a Sunday afternoon) was that he left the place where he worked in the Strawberry yards (for a car wrecking company) to go to his boarding house, about a quarter of a mile north and one block east of Strawberry crossing. He walked north between the rails of the east switch track (the run around track), at the rate of two and a half miles per hour, all the way from the yard office to the place where he was struck south of the scale house. This track ran northwest from the yard office for about 400 feet to a switch (300 feet south of the scale house) where it curved somewhat more to the north to parallel the main line tracks. It also curved again, slightly to the east, farther north to go to the east of the scale house. There was a path on the east side of the east switch track from three to six feet wide with a ditch between it and the board fence of the Wood Mosaic plant. Plaintiff said he "just walked right on up the track—never looked back;" and that "when I heard the noise, the engine was right on me." He said it was only about six inches from him, when he saw it, and that no bell or whistle sounded. Plaintiff having no evidence that any member of the train crew saw him walking on the track, at the close of the case was permitted to reopen his case and call the fireman of the switch engine as his witness. The fireman said that he first saw plaintiff after he was injured wallowing in the weeds at the side of the switch track "just a little north of the scale house" (about 10 feet) by looking back after he heard moaning ▪▪▪ and groaning under the engine; and that he did not, at any time where he could see the track, "see anybody on that track ahead of the engine." He estimated the speed of the train at from eight to twelve miles per hour and that it was stopped within 80 to 100 feet after he located plaintiff and told the engineer that someone had been run over, stopping from 400 to 500 feet north of the scale house. He said that when the train left the south end of the yards he was "sitting in this cab window on the west side, or the left hand side . . . looking north . . . and . . . continued to ride in that position and looked north until (he) heard groaning or moaning under the cars;" that there was not "any object or obstruction of any kind on . . . that track (they) were running on;" that he "could see west of the track as far as fifty feet all the way up to the scale house" (and also see the scale house) from the yard office; that there was (west) "lot of area and I was taking in over my left shoulder clean to Strawberry Lane;" and that "if anyone were to get immediately in front of the engine (at) a distance closer to you than twenty feet away, you wouldn't see him." Plaintiff had testimony from an expert witness that such a train could have been stopped in thirty or thirty-five feet. Defendant had a statement from plaintiff, while in the hospital, that he was struck while attempting to cross over from one side of the track to the other from one walkway to another; and that he did not look south until he got in the middle of the track.

Plaintiff does not claim to have produced any direct evidence that the fireman saw plaintiff on the track ahead of the engine. However, plaintiff contends that his testimony as to what he was doing and where he was, together with the fireman's statement that he was looking north, is sufficient circumstantial evidence to warrant a finding by the jury that he was seen in time to prevent his injury. Plaintiff relies on Johnson v. Sandy Valley & Elkhorn Ry. Co., 181 Ky. 539, 205 S. W. 576, in which it is said:

"That they saw him may be established either by direct evidence or proof of facts showing that the circumstances and conditions were such that those in charge of the train could not have failed to see him. [Tennessee Cent. R. Co. v. Cook, 146 Ky. 372, 142 S. W. 683.] Thus it has been held that evidence that the injured party was on the track, that the track was straight, that the view for a long distance was unobstructed, and that the engineer was looking towards the trespasser was sufficient to take the case to the jury."

However, in that case, the court ruled as follows:

"The evidence in this case, however, does not meet with these requirements. The track was curved, and not straight. The view of a person on the bridge was obstructed by the side of the bridge. . . . In other words, the circumstances and conditions were as consistent with the theory that the engineer did not see the deceased as with the theory that he did see him, and were not sufficient to show that the engineer could not have failed to see him."

In Louisville & Nashville R. Co. v. Mann's Admr., 227 Ky. 399, 13 S. W. (2d) 257, the court, after reviewing many decisions, ruled as follows:

"The administrator argues that, because these agents of the defendant could have seen the deceased when they were 924 feet from him, therefore, it may be inferred they did see him, and, if they did, that they could have seen he was asleep, and should have stopped this train in time to have avoided injuring him. The trouble with the contention of the administrator is that it fails to note the distinction between an inference and a supposition. An 'inference' is a conclusion drawn by reason from facts established by proof; 'a deduction or conclusion from facts or propositions known to be true.' . . . A supposition is a conjecture based on the possibility that a thing could have happened. It is an idea or a notion founded on the probability that a thing may have occurred, but without proof that it did occur. . . . Because the agents of the defendant could have seen the decedent when they were 924 feet away from him, it may be supposed that they did see him, but it cannot be inferred because there are no proven facts on which to base the inference."

This decision has been approved and followed in a very recent case, Cincinnati, N. O. & T. P. Ry. Co. v. Humphrey's Admr. (Ky.), 136 S. W. (2d) 537, where there was evidence that Humphrey ran 1300

feet toward the oncoming train with his wife and two daughters following him ''waving their arms and crying out, all trying to call the attention of the man in the cab . . . to the peril of their father.'' The court said:

''It is not stated in plaintiff's evidence as a fact that those in charge ▮▮▮ of the train did see the decedent, when in a position of danger upon the track ahead, at a point distant enough for them, by then exercising ordinary care, and using the means at their command, to have stopped the train in time to have avoided injuring him, but, on the other hand, his witnesses merely state that they, as they were running up the track in an effort to overtake the decedent, saw some 'man (either the engineer or fireman) leaning out of the cab of the engine and looking towards them. They do not attempt to say how near the engine then was to the decedent. This indefinite statement on the part of the witnesses, as to where the train was with respect to the decedent when they saw the engineer or fireman looking out of the cab of the engine, was made definite by the testimony of the engineer and fireman, who state that they did not discover the presence of decedent on the track until they were about 150 feet from him, when the fireman cried 'look out' and the engineer placed the brakes in emergency and gave the warning whistle, but that they were then unable, by using all the means at their command, to stop the train before it struck and ran over the decedent. Also it is argued for the plaintiff administrator that the track was straight and the view clear for a distance of some 1300 feet from Clark's crossing and that this being so, those in charge of the train could have seen the decedent, and that therefore it may be inferred that they did see him and that they could have stopped the train in time to have avoided injuring him. Plaintiff's argument, based on this character of evidence, was well answered in the case of Louisville & Nashville Railroad Co. v. Mann's Admr., 227 Ky. 399, 13 S. W. (2d) 257, 258. . . . (Quoting therefrom the part herein above quoted.) . . . The reason and ruling of this case has been time and again approved by this court as correct.''

In the Humphrey case, the engineer and fireman were defendant's witnesses. Here plaintiff failed to make a case on even substantial circumstantial evidence before the close of the evidence, and then asked and was permitted after the close of the evidence to reopen his case to put on the testimony of the fireman. Certainly under such circumstances, we must at least consider his testimony as a whole. So taking it, what did plaintiff prove by him? That he never did at any time see plaintiff (or anyone) on the track ahead of the engine. By the test of the Humphrey case, any indefinite statement, to the effect that he was looking in the general direction of plaintiff, was made definite and certain that he *did not look at him* by his positive testimony that he never did at any time see plaintiff on the track, but

only saw him after he had been run over. Considering that plaintiff was where he said he was, this might be some evidence of the fireman's negligent looking (if he had been under a duty of lookout) but it would not be sufficient under the Humphrey case to prove (considering his whole statement and all the circumstances) that he did see plaintiff on the track and certainly not that he saw him in time to prevent his injury. [See Hilton v. Terminal R. Assn., 345 Mo. 987, 137 S. W. (2d) 520, and cases cited, for Missouri rule; see also Rashall v. St. Louis, I. M. & S. Ry. Co., 249 Mo. 509, 155 S. W. 426.] Likewise, by the test of the Mann case, the fireman's testimony (considered as a whole together with all the circumstances) was not the basis of an inference that he did actually see plaintiff before he said he did, but any such conclusion therefrom would be nothing more than supposition and conjecture.

Even by the test of the Johnson case, the same result would be reached. While plaintiff had statements in evidence that the track was "practically straight," this was a mere conclusion in conflict with physical facts. There were curves in the run around track (even a slight curve changes the direction in which a man on the side of an engine faces); and there was also a situation where the fireman necessarily had to look west (he said he did), as well as north, because it was his duty to observe the crossing and the roads leading to it from the south and west for vehicles approaching the crossing. Moreover, the fireman knew the switchman would signal for the train to stop as soon as the last car cleared the switch (plaintiff's brief said this switchman "gave the fireman a signal to stop") so he could not reasonably be expected at all times to closely observe the switch track (where he was under no duty to look and entitled to expect a clear track) between this switch and the crossing. In other words, the fireman's testimony that he did not see plaintiff on the track is not in conflict with the physical facts, and other circumstances in evidence. Therefore, as said in the Johnson case, "the circumstances and conditions ▇▇▇ were as consistent with the theory that the (fireman) did not see the deceased as with the theory that he did see him." [See also Chesapeake & Ohio R. Co. v. Hayes' Admr. (Ky.), 128 S. W. (2d) 763, and cases cited; Chesapeake & Ohio Ry. Co. v. Prater's Admrx., 251 Ky. 84, 64 S. W. (2d) 463; Coleman's Admr. v. Chesapeake & Ohio R. Co., 246 Ky. 29, 54 S. W. (2d) 361.] Plaintiff cites many Missouri cases but this case must be decided on the law of Kentucky. We, therefore, hold that plaintiff's evidence was not sufficient to support a finding that the fireman actually saw plaintiff in time to prevent his injury.

▇▇▇ Plaintiff further contends that he should have been permitted to go to the jury on the theory (which the court refused) that he was an invitee to whom defendant owed the duty of lookout at the place where he was injured. Whatever the Missouri law might be, the law

of Kentucky is against this contention. Plaintiff's theory is that he was an invitee because he was an employee of a car wrecking contractor who was dismantling cars for defendant in its Strawberry yards. In Louisville & Nashville R. Co. v. King, 227 Ky. 283, 12 S. W. (2d) 860, where this same contention was made as to an employee of a contractor building a double track on defendant's right of way, the court said:

"If it should be considered that the making of the contract with the construction company was an implied invitation to all of its employees to use the railroad tracks, such use would have to be confined to the place where the work was actually going on, or to such points on the tracks as it was reasonably necessary to use in connection with the work."

The court held therein that the employees were not invitees to walk on defendant's tracks from their boarding places to their place of work, when that was not their only means of access, distinguishing L. E. Meyers' Co. v. Logue's Admr., 212 Ky. 802, 280 S. W. 107, cited by plaintiff. The court also held therein, after reviewing the evidence, which showed user by more people than in this case (here the user shown was too occasional and sporadic and not sufficiently definite as to the particular track) that there was "nothing which substantially shows that the railroad tracks at the place of injury had been habitually and continuously used at the point where appellee was injured to such an extent as to require those in charge of appellant's trains to maintain a lookout and give signals." The Kentucky cases require a showing of user (habitual and continuous) not only as to an exact place but also such user at the same time and hour. [See Louisville & Nashville R. Co. v. Lankford's Admr., 259 Ky. 670, 83 S. W. (2d) 18; Louisville & Nashville R. Co. v. Davidson's Admr., 246 Ky. 231, 54 S. W. (2d) 911; Lawson v. Louisville & Nashville R. Co., 213 Ky. 767, 281 S. W. 994.] In this case plats and pictures in evidence show that plaintiff could have traveled by public roads from his boarding house to his place of work in about the same distance, as on the track. Plaintiff had frequently gone over that route in an automobile driven by the man with whom he boarded. There was also a wide path, east of the run around track, from Strawberry crossing south to the yard office, which was a better walkway than the track itself. It was shown that this path had been much used when the Strawberry yards were in active use. Certainly plaintiff's evidence fails to show that he was an invitee under the rule of the King case; and also fails to show such habitual and continuous use (particularly on Sunday) to such an extent as to require those in charge of switching movements to keep a lookout, under the Kentucky law, for persons on the run around track south of Strawberry crossing.

The judgment is reversed. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

ON MOTION TO TRANSFER TO COURT EN BANC.

HYDE, C.—Plaintiff, as ground for transfer to Banc, reargues matters heretofore argued in the briefs and on motion for rehearing. As to these (including the contention that there could be a case of duty to plaintiff to keep a lookout on a switching movement in the part of defendant's yards involved) we reaffirm the rulings made.

■ The motion further seeks a modification of the opinion so that the cause will be remanded for a new trial. Plaintiff says: "In its opinion the Court definitely holds that plaintiff's judgment should be sustained if plaintiff's own witness (the defendant's ■■■ fireman) had not denied specifically that he did not actually see plaintiff's peril. This suggestion can be easily complied with. All plaintiff has to do to win his case and hold his judgment would be to not call the defendant's engineer (or fireman) if the Court adheres to the rule that in this particular case plaintiff is bound by all the statements of the adverse hostile witness." In considering this part of the motion, we have carefully read the depositions of the engineer (who also said he did not see plaintiff before he was struck and further stated that he had not looked toward the fireman before he called to him to stop) and of the fireman (also the other depositions) which plaintiff offered in connection with their testimony. However, these do not show substantial evidence to go to the jury upon the theory of an actual discovery of the plaintiff in a position of peril in time to prevent his injury; and certainly not on the fantastic theory (now advanced) that they could have done something to save him after plaintiff saw the engine only a foot from him and yelled. Plaintiff's trouble is a failure of proof to establish any theory of liability. Of course, on any primary negligence he would be barred by his own contributory negligence.

■ Plaintiff's case was originally based upon the theory that plaintiff was at a place where he was an invitee so that there was a duty, on defendant's employees making switching movements in these yards, to keep a lookout for him. The situation, when the whole case was closed, was that plaintiff had failed to make a case on the invitee theory. Likewise, there was no evidence whatever, direct or circumstantial, to show that defendant's fireman ever actually saw plaintiff on the track. Thereafter, plaintiff was permitted to reopen the case and call the fireman to attempt to prove this essential fact (of actual discovery) by him. The fireman very positively said he never did see plaintiff until after he had been run over by the engine, and his direct examination shows that plaintiff's counsel expected him to so testify. (The direct examination as to this was as follows: "Q. Now, as I understand it, you pulled from what was known as Napother yards north on track No. 2 and that you finally discovered Draper south of the scale house after he was injured on that pull? A. You mean when he was injured? Q. Yes. A. I found him just

a little north of the scale house. When I saw him first he was about ten feet from there. Q. Well, when you first saw Draper was after he was injured, I understood? A. Sir? Q. When you first saw Draper he was lying beside the track after he was injured? A. That is right. He was lying— Q. That is right. Now, I understood that that was just a little south of the scale house? A. Yes, sir.") Thereafter, the fireman further testified that he was looking north as the train went north to clear the switch in the Strawberry yards. (The direct examination as to this was, as follows: "Q. When you left the south end of the yards on that occasion to go north, you were sitting in this cab window on the west side, or the left-hand side of the cut? A. Yes, sir. Q. Is that right? A. Yes, sir. Q. Looking north? A. Looking north. Q. And that you continued to ride in that position and looked north until you heard groaning or moaning under the cars? A. Yes, sir. Q. Is that right? A. Right.") Plaintiff claims this part of his testimony made a case for the jury, because the fireman's testimony as to the direction of his looking (which was stated even more positively in the fireman's deposition) was sufficient circumstantial evidence to warrant a finding that the fireman did see plaintiff on the track in a position of peril in time to have thereafter avoided his injury under the last chance rule of Kentucky.

The trouble with this contention is that the only witness plaintiff called to prove this fact, by such circumstantial evidence, gave positive direct testimony that he never did see him on the track. Our rule as to such a situation has always been, as stated by Judge LAMM in Rodan v. St. Louis Transit Co., 207 Mo. 392, l. c. 408, 105 S. W. 1061, that: "If A put B on the stand and prove by him a certain state of facts, this does not preclude A from putting C, D or E on the stand and proving a different state of facts; but if A puts B on the stand as his only witness to prove a fact, and does prove it, then he is precluded from impeaching B, or from otherwise inviting the jury to disregard B's testimony. He may not avoid his dilemma in that way." [See also Manchester Bank v. Harrington (Mo.), 199 S. W. 242; Orlann v. Laederich, 338 Mo. 783, 92 S. W. (2d) 190; Schroer v. Brooks, 204 Mo. App. 567, 224 S. W. 53; Cook v. St. Joseph Ry., L., H. & P. Co., 232 Mo. App. 313, 106 S. W. (2d) 38; Polkowski v. St. Louis Public Service Co., 229 Mo. App. 24, 68 S. W. (2d) 884; Raw v. Maddox, 230 Mo. App. 515, 93 S. W. (2d) 282.] The application of the rule, as to impeaching one's own witness, has been limited and under some circumstances cross-examination of such witness permitted. [Smith v. Ohio Millers' Mutual Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920; Burnam v. Chicago, Great Western R. Co., 340 Mo. 25, 100 S. W. (2d) 858; Schipper v. Brashear Truck Co. (Mo.), 132 S. W. (2d) 993, 125 A. L. R. 674; Monsour v. Excelsior Tobacco Co. (Mo.), 144 S. W. (2d) 62.] Nevertheless, since a plaintiff has the

burden of proof, if he puts on only one witness to prove a fact and his positive statement on direct testimony is that the fact is definitely one way, then the plaintiff cannot have the jury disregard his only direct evidence on the point and find that the fact is exactly the opposite on the basis of inferences from circumstances also stated in the testimony of this same witness. This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact.

We would be compelled to hold that there was such a failure of proof even if we considered that the direct and circumstantial evidence given by this witness was of equal weight and is directly contradictory. (We have shown in the opinion why it is not, and find that the depositions show even more clearly the situation of the second curve of the ''run around track'' to go around the scale house.) Such circumstantial evidence from the testimony of the fireman would not be substantial evidence to prove timely actual discovery by him over his direct positive testimony (both at the trial and in his deposition) to the contrary. This is true because of the rule of circumstantial evidence that where facts, proved by the party having the burden of proof, give no more than an equal basis to two inconsistent inferences as to an essential fact, such party has failed by his proof to remove his case beyond the realm of speculation and conjecture as to the existence of this essential fact. [Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31; Cochran v. Thompson (Mo.), 148 S. W. (2d) 532; Voorhees v. C., R. I. & P. R. Co., 325 Mo. 835, 30 S. W. (2d) 22; Rashall v. St. L., I. M. & S. Ry. Co., 249 Mo. 509, 155 S. W. 426; Fritz v. St. L., I. M. & S. Ry. Co., 243 Mo. 62, 148 S. W. 74; Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 52 Sup. Ct. 391, 77 L. Ed. 819.] In short, plaintiff could not thus prove, by inferences from facts shown by this fireman's testimony alone, that he actually saw plaintiff in time to prevent his injury when the fireman's positive, direct testimony was that he did not see him. To hold otherwise, under the circumstances of this case, would allow the jury to find that the fireman actually saw plaintiff on evidence that at most only tends to show he could have seen him. We, therefore, hold that plaintiff is not entitled to the modification sought because we must hold that the fireman's testimony (even taking all that appears in his deposition together with his testimony at the trial) could not amount to substantial evidence to prove that he actually saw plaintiff in a position of peril on the track, south of the scale house, in time to prevent striking him.

The motion to transfer to the Court en Banc is overruled. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.