236 S.W.2d 14 (1951)
SIGMUND
v.
LOWES.
No. 27949.
St. Louis Court of Appeals. Missouri.
January 16, 1951.
*15 J. Grant Frye, Cape Girardeau, for appellant.
*16 Limbaugh & Limbaugh, Cape Girardeau, for respondent.
HOUSER, Commissioner.
This is a landowner's suit against his sharecropper "for damages for conversion and other wrongs" arising out of an oral sharecropping agreement for the letting of plaintiff's farm in Cape Girardeau County, Missouri, during the years 1947 and 1948.
The petition is framed in one count with eight separate and distinct claims of conversion and breach of contract asserted against defendant in separate paragraphs. Defendant's answer specifically denies each allegation of conversion and wrongdoing.
At the close of plaintiff's case the court directed the jury to return a general verdict for defendant. Plaintiff has appealed on the ground that the trial court erred in directing a verdict for the reason that plaintiff made a prima facie case for the jury on each of the several claims.
Plaintiff at the outset is met with the contention that the judgment of the trial court should be affirmed for the reason that plaintiff made no specific assignments of error in his brief and that his points and authorities are too general to present anything for review.
The motion for a new trial assigned error in excluding competent and material evidence offered by plaintiff and in sustaining defendant's motion for a directed verdict and in directing a verdict in favor of defendant. The first assignment was not carried forward in appellant's brief either under points and authorities or in argument and therefore was abandoned. Stevens v. Dickey, Mo.App., 222 S.W.2d 563.
The second assignment involves the question whether plaintiff's evidence made a submissible case. In his brief under "Points and Authorities", plaintiff points out the evidence on which he relies to sustain each of his various claims and asserts in each instance that the evidence was sufficient "to make a prima facie case" or "to go to the jury" or "to permit an inference." In his argument plaintiff states that "there were about 7 prima facie cases for a jury instead of no case at all." Although appellant did not use the precise language of the motion for new trial in the assignments of error contained in his brief, there is no such defect as to impede the work of the court in arriving at a clear understanding of the point involved, and we feel amply justified in refusing to dispose of the case on this technical ground. Leath v. Weaver, Mo.App., 202 S.W.2d 125.
In determining whether a plaintiff has made a submissible case on any of the eight claims set forth in his petition, it must be remembered that it was incumbent upon the plaintiff to produce substantial evidence, Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356, but if there was any competent evidence from which the jury reasonably could have concluded that plaintiff was entitled to recover from defendant, then the court should have submitted the case to the jury. Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W. 2d 825.
The defendant's motion for a directed verdict admitted as true every fact and circumstance which the plaintiff's evidence tended to prove and it was the duty of the trial court to give plaintiff the benefit of every inference of fact which reasonably could be drawn therefrom. The evidence must be considered in the light most favorable to the plaintiff; all evidence unfavorable to the plaintiff must be disregarded; the defendant's evidence must be disregarded except wherein it tends to aid the plaintiff's case and except as noted, infra; and the verdict should be directed against the plaintiff only when the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. Hopkins v. Kurn, 351 Mo. 41, 171 S.W.2d 625, 149 A.L.R. 762; 27 Missouri Digest, Trial, 156(3).
In the case at bar the plaintiff called the defendant to the stand as one of the plaintiff's witnesses. In the course of his testimony defendant related certain facts which were not later contradicted by plaintiff or any other witness for plaintiff. Defendant correctly claims that plaintiff is bound by such uncontradicted evidence and *17 that it should be considered in determining whether he made a submissible case for the jury. Klotsch v. P. F. Collier & Son Corporation, 349 Mo. 40, 159 S.W.2d 589, loc. cit. 594; Mississippi Valley Trust Co. v. Francis, Mo.App., 186 S.W.2d 39, loc.cit. 41; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, loc.cit. 633, 634; Spencer v. Anderson, Mo.App., 229 S.W. 226, loc.cit. 227.
We shall take up the various claims seriatim and, according the plaintiff his due, shall state the salient facts in the light most favorable to the plaintiff, omitting any unfavorable evidence adduced from any of plaintiff's witnesses, including, however, any testimony unfavorable to plaintiff's case, given by defendant which stood uncontradicted.
1. Conversion of Seed and Fertilizer in 1947.
Plaintiff testified that after the wheat crop was planted, and on October 11, 1947, he saw 14 sacks of fertilizer and ¾ of a sack of seed wheat in a shed on Amon Bollinger's place. Bollinger lived on plaintiff's land adjoining the land on which the wheat was sowed. Bollinger said he noticed 2/3 of a sack of wheat and some fertilizer there. No witness knew what became of the fertilizer. No witness connected defendant with the disappearance of the fertilizer. Plaintiff testified that he requested defendant to return the seed and fertilizer to the Farm Bureau and that defendant repeatedly promised but failed to do so. Plaintiff did not thereafter receive the fertilizer or seed. Plaintiff did not know whether defendant spread the fertilizer on the field after he finished sowing the wheat.
This is not prima facie evidence of conversion by the defendant. The claim rests entirely upon inference. It is just as reasonable to infer that Bollinger, plaintiff or any unknown stranger may have taken the seed and fertilizer as it is to infer that defendant converted it. Where evidence will support either of two contradictory inferences respecting the ultimate facts, there is a failure of proof, since it leaves the subject of liability in the field of conjecture. Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663.
2. Conversion of Lumber.
Plaintiff had a sawmill which was located on the "back end" of his land, beyond the part rented to defendant. It was necessary to go through the land rented by defendant to reach the sawmill from the highway. In the early part of 1948 one Shelby Brown sawed eleven or twelve thousand feet of rough lumber for plaintiff. The lumber was stacked near the mill. Plaintiff later missed 3500 feet of lumber. He inspected the roadway, saw where a truck with dual wheels "had backed up to this pile and loaded the lumber on." Defendant had a truck but there was no evidence that it was dual-wheeled or that the tracks on the ground corresponded with the treads of the defendant's tires. Plaintiff attempted to show that defendant's truck was a dual-wheeled truck but was not allowed to do so, and, as we have indicated, supra, that point was abandoned.
The foregoing evidence does not connect defendant with the disappearance of the lumber even by inference. It is not substantial evidence authorizing the submission to the jury of the question whether defendant converted the lumber.
3. Division of Alfalfa Hay.
Plaintiff alleged that defendant agreed to cut alfalfa for half the hay; that instead of dividing it equally and fairly defendant selected the choice hay "freest from weeds and grasses" and that there was a disparity of value of $50 in the shares of hay received by the respective parties.
It was conceded that plaintiff and defendant each received 177 bales. Plaintiff testified that defendant was supposed to sell all the hay and divide the money; that there was some weedy and some good hay in the eight acres cut. Defendant cut the 14 acre field "in patches". Defendant sold his hay "behind the baler" at $25 per ton. Defendant told plaintiff he could not sell plaintiff's hay, which was practically all weeds. Plaintiff did not see defendant's hay nor did he see the defendant cut it but he did see the growing alfalfa before it was *18 cut and testified that there was good hay in the field but that he "didn't get it." When the hay was cut alfalfa hay was worth $25 and $30 per ton. The hay plaintiff received was worth $5 per ton and was unsalable.
The defendant explained why he received $25 per ton for his share of the alfalfa hay. He testified that one Campbell had made a contract with him to purchase defendant's share of the hay raised on the Sigmund farm "sight unseen" at $25 per ton; that when the hay was delivered, the purchaser was disappointed with its quality and stated that he did not want any more of it but that he would go through with his bargain. This evidence remained uncontradicted in the record and contained a full and complete explanation of the reason defendant received $25 per ton for his portion of the hay, effectively explained away any unfavorable inferences which might have been drawn from the bare fact that defendant received $25 per ton and had the effect of destroying plaintiff's cause of action based upon disparity in the value of the shares received by the respective parties.
Furthermore, there was no evidence by which the jury could have determined the value of a half interest in 177 bales at $25 or $30 per ton, less a half interest in 177 bales at $5 per ton. We will not take judicial notice of the number of bales there are in a ton of alfalfa hay. The burden was on plaintiff to prove every element of his case, including the measure of damages. The evidence on damages was insufficient to justify submitting this phase of plaintiff's case to the jury.
4. Conversion of Fertilizer in 1948.
Plaintiff and defendant agreed to use fertilizer on the corn crop in 1948, plaintiff to pay 2/5 and defendant to pay 3/5 of the cost thereof. Plaintiff brought 8,640 pounds of fertilizer for $176.56 to apply to the farm under an agreement with defendant to spread it at the rate of 200 pounds per acre with the drill "set on 17" gauge, at which setting an ordinary fertilizing machine drills 200 pounds per acre. Thirty-two acres were thus fertilized. Defendant did not deliver any fertilizer back to plaintiff. Plaintiff did not know of his own knowledge that defendant did not put all of the fertilizer on the land and did not see defendant spreading the fertilizer.
This does not constitute direct or circumstantial evidence that defendant did not spread all of the 8,640 pounds of fertilizer or that he converted any of it. A plaintiff cannot sustain his case by forced and violent inferences, Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, or by building inference on inference, Pape v. Aetna Casualty & Surety Co., Mo.App., 150, S.W.2d 569; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947.
5. Conversion of 353 Bushels of Corn in 1947.
Defendant agreed to raise a corn crop on plaintiff's land in 1947 for 2/3 of the crop. Twenty-six acres were planted in July, 1947. The growing crop in the field was viewed by plaintiff before it was gathered and he estimated that it would produce 60 bushels per acre. It matured well and made good corn. Plaintiff received 185 bushels as his entire share. Corn was worth $2.25 a bushel in the fall of 1947. Defendant himself testified that with the help of some men he gathered all of the 1947 crop and that he fed his share to his hogs.
This made a submissible case on the theory of conversion. Defendant objects to the testimony given by plaintiff in which he estimated that the field would produce 60 bushels of corn to the acre. Defendant contends that such testimony is not substantial evidencethat it is only an estimate. In this respect we do not agree with defendant. Plaintiff was engaged in agriculture. His counsel qualified him by showing that he had been farming practically all of his life, had seen corn of similar appearance to this corn before and after maturity, had seen corn gathered from time to time through the years, saw the 1947 corn crop during the growing season and after maturity and before it was gathered; and that he went over the ground and knew something about the corn throughout the entire tract. His testimony concerning the probable yield and quantity of the corn crop was competent and substantial evidence. *19 32 Corpus Juris Secundum, Evidence, § 475, page 128; 32 Corpus Juris Secundum, Evidence, § 543, page 271; Smith v. Sickinger, Mo.App., 221 S.W. 779, loc.cit. 780; Mayhew v. Glazier, 68 Colo. 350, 189 P. 843, loc.cit. 847; Chicago, R. I. & G. Ry. Co. v. Longbottom, Tex.Civ.App., 80 S.W. 542; Pedigo v. Roseberry, 340 Mo. 724, 102 S.W. 2d 600, loc.cit. 606.
If plaintiff's testimony was credible the jury reasonably could have found that 1,560 bushels of corn were produced; that plaintiff was entitled to 1/3 thereof or 520 bushels; that plaintiff received only 185 bushels; that defendant gathered all of the 1947 crop and fed all of it to his hogs with the exception of the 185 bushels he delivered to plaintiff. The jury was entitled to conclude from this that there was "an unauthorized act of dominion or ownership" over the property of plaintiff, under the doctrine of Blum v. Frost, 234 Mo.App. 695, 116 S.W.2d 541.
Defendant argues that plaintiff has made no case on conversion because there was no evidence that plaintiff made demand on defendant to deliver the corn or that defendant refused to deliver, citing St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 88 S.W.2d 254, and Detmer v. Miller, Mo.App., 220 S.W. 2d 739.
We have examined these cases and find them not persuasive in the case at bar. Demand and refusal are merely evidential, not creative, and they need not be shown to make out a case of conversion where some other independent act of conversion (some act in opposition to the rights of the owner) is in evidence. Citizens' Bank of Sikeston v. Scott County Milling Co., 210 Mo.App. 603, 243 S.W. 433.
In German American Bank v. Brunswig, 107 Mo.App. 401, 81 S.W. 461, the court indicated that a conversion may be proved in any one of three different ways: by showing (1) tortious taking; (2) any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; or (3) refusal to give up possession to the owner on demand.
If defendant gathered corn in which plaintiff had a 1/3 interest and fed it to his hogs, there was a conversion dispensing with the necessity of proof of demand by plaintiff and refusal by defendant to deliver.
6. Refusal to Gather Balance of 1948 Corn Crop.
Defendant agreed to gather the 1948 corn crop. Several times after the corn had matured, and while the weather was suitable for gathering corn, plaintiff requested the defendant to gather it. The corn could have been gathered in the latter part of September and in October and November, 1948. Albert Schwacht offered to pick the corn for the defendant but the defendant did not have him do it. Although defendant did gather some of the corn he did not finish gathering it and delivered to the plaintiff as plaintiff's share only 129 bushels of the 1948 corn crop between the time it matured in 1948 and the month of March, 1949. Finally, on April 23, 1949, after 20% of the corn in the field had spoiled and fallen to the ground, plaintiff himself hired three men to gather the 1948 corn crop. They gathered 205 bushels for which a reasonable charge was $26.
Standing alone, this evidence would have entitled plaintiff to go to the jury, for it provides the basis for a jury finding that there was a refusal to complete the gathering of the crop. Plaintiff, however, is faced with the fact that he placed the defendant himself on the stand and that the defendant gave uncontradicted testimony that on the day after April 23, 1949, the defendant went to the field to complete the gathering of the 1948 corn crop. This operated to destroy the claim that defendant refused to complete the gathering of the corn, and the court properly ruled that no submissible case was made on this claim.
7. Spoilage of 1948 Corn Crop for Failure to Gather.
The evidence most favorable to the plaintiff showed that about 20% of the corn was down in the mud and spoiled on April 23, 1949, when plaintiff finished gathering the corn. Plaintiff concludes that defendant's *20 failure to gather the corn caused this loss and spoilage, but there is no evidence whatever in the record to show either the cause of the corn falling, or at what time it fell, except the uncontradicted testimony of defendant that the only corn spoiled was that which fell down early in the fall, "about the time it frosted" and that the cause of its falling was not "weatherizing", but the fact that it grew on "little weak stalks." Plaintiff is bound by this testimony, which was not contradicted by plaintiff or any of his witnesses.
Thus there was no evidence upon which to justify a submission to a jury of the question of defendant's liability for this spoilage.
8. Conversion of 414.82 Bushels of the 1948 Corn Crop.
Defendant agreed to raise a corn crop on plaintiff's land in 1948 for 2/3 of the crop. Thirty-two acres were planted. Plaintiff saw the growing corn in the field both before and after it matured and he estimated that it would produce "a little over 60" bushels per acre. Other witnesses estimated the yield at 45, 50, 55 and 60 bushels per acre. Plaintiff estimated the whole field made about 1,800 bushels of corn. Corn was worth $1.46 a bushel in the fall of 1948. The crop was to be divided by rows15 rows for defendant, 10 rows for plaintiff. Plaintiff received 129 bushels from the defendant and 205 bushels when he hired men to complete the gathering on April 23, 1949, or a total of 334 bushels. Defendant started gathering his share of the corn before he gathered any for the plaintiff. In gathering the corn defendant skipped around in the field "here and there", picking the best and leaving the worst corn. In answer to the question, "Did you gather the 1948 corn crop?" the defendant answered, "All but what the doctor (meaning plaintiff) beat me to" and in answer to the question, "What did you do with the corn that you kept for yourself ?" defendant answered, "I took it home and fed it."
This constituted a submissible case on the theory of conversion. See 5, supra.
Defendant is mistaken in his claim that defendant's testimony as to the quantity of corn received by plaintiff both in 1947 and 1948 was uncontradicted and is, therefore, binding on plaintiff. Plaintiff definitely testified that he received only 185 bushels in 1947 and 334 bushels in 1948.
The other criticisms leveled by defendant at plaintiff's testimony (that it was grossly exaggerated, confusing, contradictory, and weak) go to the weight of the evidence, which, of course, is for the jury, and is not a matter for the appellate court to determine.
The court committed no error in taking away from the jury consideration of the claims contained in paragraphs 3, 4, 5, 6, 8 and 10 of plaintiff's petition. On the other hand, the court erred in directing a verdict for the defendant on the claims contained in paragraph 7 and 9 thereof.
The judgment of the circuit court should be reversed and the cause remanded with directions to hold the general verdict in abeyance insofar as paragraphs 3, 4, 5, 6, 8 and 10 of plaintiff's petition are concerned, and a new trial awarded only on the claims stated in paragraphs 7 and 9 of plaintiff's petition, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause is remanded with directions to hold the general verdict in abeyance insofar as paragraph 3, 4, 5, 6, 8 and 10 of plaintiff's petition are concerned, and for a new trial only on the claims stated in paragraphs 7 and 9 of plaintiff's petition, and upon the determination of said claims the trial court shall thereupon enter final judgment for defendant on the claims stated in paragraphs 3, 4, 5, 6, 8 and 10 of plaintiff's petition and for the then prevailing party on the claims stated in paragraphs 7 and 9 thereof.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.