Ruloff E. CUTTEN et al., Appellants,

v.

Robert W. LATSHAW and Martha J. Latshaw, Respondents.

No. 23256.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

Lawrence R. Brown, John C. Noonan, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellants.

Roy P. Swanson, Arthur M. Wright, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondents.

MAUGHMER, Commissioner.

The Circuit Court of Jackson County, Missouri permanently enjoined plaintiffs from further prosecution of their suit against defendants which is now pending in the District Court of Johnson County, Kansas. Plaintiffs have appealed. Where only injunctive relief is sought and it cannot be certainly determined from the record that the pecuniary value resulting from its being granted or denied exceeds $15,000, appellate jurisdiction is in this court and not in the Supreme Court. Joe Dan Market, Inc. v. Wentz et al., 321 Mo. 943, 13 S.W.2d 641.

No testimony was offered or heard by the trial court. The facts must be assembled from the pleadings, from defendants' motion to restrain with supporting suggestions in affidavit form, together with plaintiffs' suggestions in opposition, likewise in affidavit form. However, the material facts are apparently either conceded or not disputed.

Plaintiffs comprise 30 individuals, doing business as a partnership under the name of E. F. Hutton & Company, with offices at 111 West 10th Street, Kansas City, Missouri. The plaintiff John Latshaw is a citizen and resident of Johnson County, Kansas. None of the individual plaintiffs are residents or citizens of the state of Missouri. The defendants Robert W. and Martha J. Latshaw are citizens and residents of Johnson County, Kansas, which county adjoins Jackson County, Missouri, within which most of the City of Kansas City, Missouri is located. From November, 1957 until May, 1959, defendants were clients of E. F. Hutton & Company, trading on the Chicago and Kansas City Boards of Trade in commodity futures, particularly wheat and beans. Plaintiffs claim that defendants are indebted to them on this ac-

count. Defendants deny they are so indebted and assert in their counterclaim that plaintiffs owe defendants.

On August 28, 1959, plaintiffs filed suit (No. 26,143) in the District Court of Johnson County, Kansas against defendants on this account. On the same day service was had upon each defendant. Responsive thereto defendants appeared by their attorneys and filed first a "Motion to Make More Definite and Certain" and then filed answer and counterclaim.

Thereafter on August 29, 1959, plaintiffs filed an identical suit against the same defendants in the Circuit Court of Jackson County, Missouri (No. 618,666). Again defendants answered, counterclaimed and then filed the motion to restrain, out of which this appeal stems. Why did plaintiffs one day after the Kansas suit, file exactly the same suit against the same parties in Missouri? Plaintiffs' strategists say they learned from sources which they believed reliable that unless they did bring this second suit they would be sued by the defendants in Missouri, and they did not wish to lose either the initiative or their role as parties plaintiff.

On May 17, 1960, the motion to restrain was sustained by the Missouri trial court for the declared reasons that "The Kansas suit is a duplicate of the one now pending before this court; that plaintiffs, who were doing business in Missouri, chose this forum and it appears from the records and suggestions filed that the acts complained of in both the petition of plaintiffs and the counterclaim of defendants occurred in Missouri, and the records of the plaintiffs are undoubtedly at their office in Missouri". The order then "permanently enjoined" plaintiffs, their agents, servants and employees from further prosecution of the suit filed by them against defendants in the District Court of Johnson County, Kansas, at Olathe, and provided that this order be deemed a final judgment for purposes of appeal. Plaintiffs filed motion for new trial on May 19, 1960, which motion was on the

same date overruled. Timely appeal followed.

On their appeal appellants present two points. First, the Missouri trial court did not have jurisdiction to enjoin the nonresident plaintiffs from further prosecution of their suit against defendants in Kansas. Second, there is no showing that such prosecution would impose any unconscionable burden or hardships on defendants and therefore it was error to grant the injunction.

The question before us is an interesting one. The general subject has been presented many times before many courts but most frequently upon facts somewhat different from ours, especially as to domicile.

██ It seems well settled in Missouri that where two actions involving the same subject matter are brought between the same parties in courts of concurrent jurisdiction, the court in which service of process is first obtained acquires exclusive jurisdiction and may dispose of the entire controversy without the interference of any other court. State ex rel. Davis et al. v. Ellison et al., 276 Mo. 642, 208 S.W. 439; State ex rel. Dunphy v. Eversole, Mo.App., 339 S.W.2d 506, 509. Prohibition will lie to prevent such interference and the court in which the subsequent action is brought should sustain a plea in abatement. State ex rel. Mack v. Scott, 241 Mo.App. 674, 235 S.W.2d 106; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626. However, this rule does not necessarily apply where the prior action is pending in a court of different or foreign jurisdiction such as in courts of different states. 1 C.J.S. Abatement and Revival § 64, p. 97; Draper v. Louisville & N. R. Co., supra; State ex rel. Dunphy v. Eversole, supra. "In the application of the doctrine of 'another action pending,' each state is regarded as foreign to every other state; and hence, the pendency of an action in personam, or transitory action, in one state cannot, as a general rule, be pleaded in abatement of an action subsequently commenced in an-

other state between the same parties for the same cause of action; * * *". 1 C.J.S. Abatement and Revival § 65, p. 98.

██ While courts of one country or state have no authority to stay proceedings in the courts of another, they have undoubted authority to control all persons and things within their territorial limits. Therefore, insofar as its own citizens are concerned, Missouri courts may, acting in personam upon its citizens, direct them by injunction to proceed no further in a Kansas suit and enforce obedience by process in personam. In our case none of the individual plaintiffs reside in Missouri, but Hutton & Company does maintain its office in Missouri.

In Doerr et al. v. Warner et al., 247 Minn. 98, 76 N.W.2d 505, the Supreme Court of Minnesota restrained a co-trustee from prosecuting a like action in Utah. However, the Minnesota action was commenced first and a Minnesota trust was involved requiring settlements to be made in Minnesota. The court said (76 N.W.2d at page 513): "It is well settled that the court first obtaining jurisdiction of the subject matter and of the parties may properly restrain one of the parties from proceeding in another state". The court also expressed the view that the real reason impelling most courts to deny an injunction against a nonresident was not lack of jurisdiction, but because ordinarily it could not be enforced. The Minnesota court could enforce and the injunction was granted, but basically for these reasons: (1) the Minnesota suit was filed first and (2) only the Minnesota court where the trust was pending and its property located could completely adjudicate the controversy.

In Carpenter, Baggott & Co. v. Hanes, 162 N.C. 46, 77 S.E. 1101, plaintiffs first sued defendant in New York and obtained service by attachment and garnishment. Shortly thereafter plaintiff sued defendant in North Carolina. The dispute was over a customer's account covering trading in grain futures—the same as in our case.

The trial court issued a mandatory injunction, restraining further prosecution of the New York suit. The Supreme Court reversed outright and said (77 S.E. at page 1101): "There are many cases that hold that the courts of a state where both parties are domiciled may restrain the prosecution of suits between such parties in a foreign jurisdiction. (citing cases). This power has been most frequently exercised in those cases where a resident creditor is seeking to evade the laws of his domicile, and the ability to exercise it rests upon having the person of the party enjoined within reach of the process of court. But, even in such cases, the power should be exercised sparingly and only to suppress manifest injustice and oppression, and not from any arrogant sense of greater ability to do justice to either party or because of more favorable laws, or of convenience of the parties. Bigelow v. Old Dominion Copper Co., 74 N.J.Eq. 457, 71 Atl. 153, and many other cases. But such power cannot be exerted to enjoin parties who are not domiciled in the jurisdiction of the court merely on the ground that the party has come into court by bringing an action herein".

The Supreme Court of Oklahoma in Missouri, K. & T. Ry. Co. v. Bradshaw, 37 Okl. 317, 132 P. 327, L.R.A.1917F, 1013, discussed and decided a similar situation. In that case suit was originally brought and service secured in Oklahoma. Thereafter the Oklahoma defendant sued the Oklahoma plaintiff in Jackson County, Missouri. The court held that the Missouri action could not be effectively pleaded in bar or in abatement, saying: "The proper rule in such cases is that one who has been sued by his creditor cannot plead in abatement of the suit the fact that after it was commenced he was summoned in a foreign jurisdiction as garnishee in an action against the plaintiff, and that the maxim, 'Qui prior est tempore, potior est jure,' (which we translate as "Priority in time gives preference in law") controls in such cases. To hold otherwise would inevitably bring about confusion, if not conflict, in the jurisdic-

tion of courts that would embarrass and prove a hinderance in the administration of justice". The court then quoted with approval as follows from Wood v. Lake, 13 Wis. 84, 94: " 'It would be irrational and absurd to say that the court which had first acquired jurisdiction should arrest its proceedings, because the court of another government, having concurrent jurisdiction over the same subject-matter and parties, had subsequently attempted to take jurisdiction of the case' ". 132 P. 328.

In Bigelow v. Old Dominion Copper Mining & Smelting Co., 74 N.J.Eq. 457, 71 A. 153, 160, the court of chancery of New Jersey gave a learned and exhaustive review of the authorities then in existence. In that case an almost, if not quite, identical suit was first brought in Massachusetts. The court upon motion, dismissed the bill of complaint brought later in New Jersey. The court ruled generally (1) The power of a court of equity in one state to restrain persons within the control of its process from the prosecution of suits in other states is clear, but upon grounds of comity, it should be sparingly exercised; (2) As between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of a controversy should be allowed to proceed and dispose of it without interference; (3) This court will not enjoin a suitor from the prosecution of an equitable action already pending in a court of full equity jurisdiction in a sister state upon any theory that this court can better weigh evidence or more justly apply any general principle of law or of equity, nor upon the ground that this court recognizes different rules of law or equity from those which obtain in the sister state; (4) Where a party oppresses his adversary by suing him in a foreign jurisdiction for the purpose of evading some established local policy of the *jurisdiction where the parties are domiciled*, equity will, in a proper case and upon proper terms, restrain the prosecution of such action; (5) It is the general rule that a party seeking relief in the courts may choose his own

forum in any jurisdiction where the defendant may be found; (6) There being no suggestion that the Massachusetts court has not complete jurisdiction over the person and subject matter, that it lacks the power to do full and complete justice, or that he has been obstructed in the production of evidence, complainant must prosecute his appeal in the courts of Massachusetts. The New Jersey court made the following specific statements:

"I have not the least doubt or difficulty about the power of a court of equity in one state to restrain its own citizens, or other persons within the control of its process, from the prosecution of suits in other states or in foreign countries. The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be. The court of equity thus appealed to acts in personam, and it is immaterial whether the threatened inequitable conduct is to be carried on within or without the limits of the jurisdiction. * * * But on general principles, equity will not interfere with the right of any person to bring an action for the redress of grievances—the right preservative of all rights—except for grave reasons; and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. The courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of the commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction.

" * * * They must be very special circumstances that will justify this court in restraining the prosecution of an equitable action already pending in a court of such ample jurisdiction. I speak not of any limitation upon the power of this court, but upon the propriety of its exercise in the particular case. Its exercise is not to be properly based upon any theory that this court knows better how to do justice than the court of last resort of the commonwealth; that it can weigh evidence better, or more justly apply to the facts any general principle of law or of equity; nor upon the ground that this court recognizes different rules of law or of equity from those which obtain in the commonwealth. A condition precedent to an application to this court for relief in all ordinary cases is the absence of a full, adequate, and complete remedy elsewhere. And besides, there is the general rule, essential to the orderly administration of justice, that, as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of the controversy ought to be allowed to proceed and dispose of it without interference; a rule established, of course, primarily for the benefit of the suitor, rather than for the protection of the dignity of the court".

In our case both of the defendants are residents of Kansas and of Johnson County, the county in which the original suit was commenced and service secured. The action is in personam, the situs of which is generally ruled to follow the person. At least one of the plaintiffs resides in Kansas and none of the individual plaintiffs are residents of Missouri, although the partnership office of Hutton & Company is located in Kansas City, Missouri. There is no suggestion that the Kansas courts cannot do full and complete justice in the premises. In addition, all the litigants on one side, and some on the other, are Kansas residents and the suit was completely commenced first in Kansas. Priority in time gives preference in law. Considera-

tion of comity between states here weighs heavily in favor of Kansas. Besides the comity feature, we must be concerned with orderly process in the administration of justice. Suppose the Kansas court should enjoin prosecution of the Missouri suit? An impasse would develop.

 We recognize the right of the Missouri court to issue an injunction in a proper case and probably it would be at least partially enforceable in this instance. However, priority, residence of the parties, comity and orderly administration all dictate disallowance of the injunction unless the facts show that refusal to grant would result in grave injustice through fraud, oppression, deprivation of right, suppression of evidence, or incomplete remedy. No showing of any of these things has been here made. It is true the office of Hutton & Company is in Kansas City, Missouri and presumably its records are here. But weighing this against the fact that many of the parties live in Kansas, and that Johnson County adjoins Jackson County, does not in our opinion raise a question of even serious inconvenience. "An injunction is a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience". 43 C.J.S. Injunctions § 1, p. 405.

Based upon all of the reasons herein stated, we believe the injunction was improvidently granted.

The judgment of the trial court granting the permanent injunction is reversed and the cause remanded.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.